HARRIET E. RODMAN SMITH

*v.*

MORTON P. ROBINSON et al.

[Decided June 13th, 1914.]

1. An encroachment by a testamentary trustee on the trust estate of infant legatees, in advance of the period of distribution, is not absolutely forbidden, but the trustee may in a proper case apply for and obtain an order therefor or his act may be ratified.

2. A trustee must invest the trust fund as directed by statute (*2 Gen. Stat. 1895 pp. 2382, 2401, 2416 §§ 116, 196, 258*), so that it may yield an income to the beneficiary, and he may not purchase real estate, and thereby burden the trust fund with the annual payments of taxes, interest, insurance, water rents and repairs.

3. A trustee must keep accurate accounts to protect the beneficiary, and, in case of doubt arising from the failure of a trustee to do so, the doubt must be resolved against him.

4. Evidence of payments by a trustee is ordinarily shown by the production of vouchers, though other convincing proof may be shown to justify an allowance to him for payments made.

5. Payments by a trustee, whether authorized in advance or afterwards ratified by a competent court, can only be lawfully made out of the property of the beneficiary to or for whom the advances are made, and cannot be made to a tenant of a particular estate out of the *corpus* which is to go to remaindermen after an estate for life or years.

6. A will whereby testator gave property in trust to pay the issues and profits thereof to a beneficiary for life, and whereby he declared that, after the death of the life tenant, it was his wish that the property should go to the heirs-at-law of the life tenant, created in the heirs a contingent remainder, for the heirs cannot be determined until the end of the life estate.

7. Where personalty is bequeathed to heirs, the word "heirs" means next of kin, in the absence of a clear intention to the contrary.

On final hearing on pleadings and proofs.

*Messrs. DeGraw & Murray,* for the complainant.

*Messrs. Maxson & Bull,* for the infant defendants.

WALKER, CHANCELLOR.

The bill is filed by Harriet E. Rodman (Smith), the widow and executrix of Isaac P. Rodman, deceased, the trustee under the last will and testament of Morton Robinson, deceased, praying the settlement and allowance of an account annexed to the bill, and a decree that the estate of the deceased trustee be reimbursed for moneys, alleged to have been expended by him, in his lifetime, in excess of the trust fund and interest, and also that the complainant be reimbursed for expenditures by her, since the decease of her husband, in the payment of taxes, interest and insurance upon, and necessary repairs to, the real estate to which reference will hereafter be made. And this upon the theory that the advances were made for the benefit of infants.

Morton Robinson, the father-in-law of the deceased trustee, Isaac P. Rodman, died on November 3d, 1893, leaving a last will and testament in which, in the residuary clause thereof, he devised and bequeathed as follows:

"All the rest, residue and remainder of my property, of whatsoever kind, and wheresoever found, I give to my wife, Anne E., and my five children, Anna M. Cross, Harriet E. Rodman, Fannie W. Turrell, Benjamin A. Robinson and Morton P. Robinson, share and share alike, with the exception of Morton P. Robinson, his share to be placed in the hands of Isaac P. Rodman, my son-in-law, in trust and for the benefit, and during the life of the said Morton P., it being my will that the said Morton P. only receive the issues and profits of his share during his life, and after his death, it is my wish that his share goes to his heirs-at-law."

The will was duly probated by one of the executors, Herbert Turrell, who paid over to Isaac P. Rodman, the trustee, in November, 1894, $5,007.61, as the share of the life tenant, Morton P. Robinson.

At the death of the testator, Morton P. survived, as did his wife and two daughters, Harriet E. and Anne E., aged, respectively, two and four years, and on April 28th, 1911, another daughter, Frances H., was born to them.

Isaac P. Rodman continued as such trustee until his death, on April 26th, 1911, sixteen years and upwards.

There is no evidence that any part of the trust fund was ever invested by the trustee (except as presently mentioned), and it

is conceded by complainant's counsel in his bill and brief, that the trustee died without having accounted, and without having asked or obtained the aid or advice of a court as to the use or expenditure of the trust fund.

The trustee, about six months after the death of the testator, expended $800 of the principal of the trust fund as part payment in the purchase of a house in East Orange, for a home for Morton P. and his family, including infant children, taking title in himself as trustee. The whole consideration was $1,800, the balance of $1,000 being secured by a mortgage covering the purchased property, made by Isaac P. Rodman, as trustee.

Shortly after the receipt of the trust fund, and up to some time in 1906, the trustee paid to the wife of Morton P. the weekly sum of $5, and also paid the taxes, interest, insurance premiums, water rents for, and some money for repairs to the house so purchased.

The deceased trustee left a will, by which he devised his residuary estate to his wife, the complainant, and appointed her executrix thereof.

After the death of her husband, although alleging the trust fund to have been exhausted, the complainant, Mrs. Rodman, continued the payments of interest, taxes, water rents and insurance premiums relating to the East Orange house. It is claimed that no part of the trust fund now remains (except this house), both principal and interest having been exhausted by the payments mentioned.

The complainant asks a decree that the real estate be charged with the excess expended by the trustee, and that the house be sold or mortgaged, and the complainant, as such executrix, relative to the trust estate, and individually, for her personal outlay, be reimbursed from the proceeds.

The settled law in this state is that encroachment upon the principal of the estate of infant legatees, in advance of the period of distribution, is not absolutely, nor under all circumstances forbidden, and that a trustee may, in a proper case, apply for and obtain the protection of an order to make such encroachment on behalf of a ward. And it appears, too, that what may be done in advance may be ratified afterwards. *Pfefferle* v. *Herr,*

*75 N. J. Eq. 219; Stephens* v. *Howard's Executor, 32 N. J. Eq. 244; In re Hannah Barry, 61 N. J. Eq. 135.*

No necessity for the invasion of the trust fund for the support of Morton's infant children is, from the evidence in the case, apparent.

The testator's widow was living and possessed of means, and continued, after the death of her husband, to bestow upon her son material and substantial aid; and other members of the family cheerfully and constantly contributed their assistance. The children were clothed by their grandmother, and their education was in the public schools, without expense, excepting music and telegraphy, which were gifts from their grandmother and aunt.

The purchase of the East Orange property as a home appears to have been a voluntary and gratuitous act of the trustee, not based upon the request, nor with the consent, of the life tenant. It is testified that it was done after a consultation with his wife, who was pleased with the prospect of a better residence, and with the other members of the family, none of whom had any interest in the trust estate. This was done largely because, it is said, the trustee wanted Morton's family to have a nice home. The result of the purchase was to burden the trust fund with the annual payment of taxes, interest, insurance, water rents and repairs.

The securities in which trustees were permitted to invest at the time the estate of Morton Robinson came to the hands of his trustee were bonds issued by this state (*Gen. Stat. p. 2382 §116*); bonds of any county, city, town or township of this state issued pursuant to authority of law, with certain limitations as to municipal indebtedness (*Ibid. p. 2416 § 258*); and bonds secured by first mortgage upon real estate estimated to be worth at least twice the amount loaned, at not less than five nor more than six per centum per annum. *Ibid. p. 2401 § 196.*

It was the duty of the trustee to have invested this fund in the manner directed by the legislature in order that it might yield an income to the *cestui que trust.* No such investment was made. The fund remained in the hands of the trustee mingled, excepting as to the $800 paid on account of the purchase of the house, with his own funds, and for a period of

sixteen years and upwards was handled by him without ac-
counting, and was used by him without any apparent apprecia-
tion of his duty and in such a way ·as apparently would have
furnished ground for his removal from office, had such applica-
tion been made. *Pfefferle* v. *Herr, supra.*

The trustee never kept any separate account of the trust fund.
The account appended to the bill is made up by the complainant
from seven or eight small books of the trustee containing memo-
randa relating to his personal affairs, and so entered therein, by
the use of initials and abbreviations as to be wholly unintelli-
gible without explanation, and explanation has not been made.

*In re Gaston Trust, 35 N. J. Eq. 60, 64,* Vice-Chancellor Van
Fleet said:

"Trustees are bound to keep clear and accurate accounts, and
in case doubts or obscurities arise from their failure to do so,
they should be resolved against the trustees. * * * The
law imposes the duty of keeping accounts on trustees for the
protection of the *cestui que trust,* and a trustee will not be per-
mitted to defeat this salutary purpose by his carelessness."

In *Dufford* v. *Smith, 46 N. J. Eq. 216, 217,* Chancellor Mc-
Gill said:

"It is the duty of trustees to keep accounts and to take and
preserve vouchers for payments they make. The burthen of
proving a matter of discharge in their accounts is upon them,
and obscurities and doubts, which they should have guarded
against, must be resolved against them."

Competent evidence of payment is ordinarily shown by the
production of vouchers, and such or other convincing proof is
usually a requisite to allowance.

Vice-Chancellor Bergen in *Willis* v. *Clymer, 66 N. J. Eq. 284,
287,* said:

"I do not think the trustee should be allowed to discharge him-
self for so large a sum of money without a voucher or some proof
of the payment other than his own testimony, and certainly not
without some proof of the circumstances connected with the
payment."

The only vouchers produced are vouchers for tax and water
bills affecting the real estate and several receipts for moneys paid

the life tenant, which he declares he signed in entire reliance upon the good faith of the trustee, but without actual knowledge of the matters involved in the receipts.

Payments, whether authorized in advance or afterwards ratified by a competent court, can only be lawfully made out of the property of the beneficiary to or for whom the advances are made. They can never be paid to the tenant of a particular estate out of the *corpus* of property which is to go to remainder-men after an estate for life or years.

While the right to relief prayed has not been established on the proofs, there is yet another reason why the bill should be dismissed. It is because the estate in remainder is a contingent one, and, as already remarked, the principal of an estate can be invaded under certain circumstances only for a beneficiary who has a vested interest in it.

It will be remembered that the testator after creating the trust in favor of his son Morton P., limited over the remainder in these words: "It is my wish that his share goes to his heirs-at-law."

Blackstone observes that "by law no inheritance can vest, nor any person be the actual, complete heir of another, until the ancestor is previously dead." *2 Bl. Com. 208.*

The devise in the case at bar is very like that in *Bartles's Case, 33 N. J. Eq. 46,* wherein the testator gave to his daughter an estate for life and after her decease to such persons as should be her heirs-at-law of land held by her in fee-simple. Chancellor Runyon, speaking of this devise (at *p. 47*), said:

"The remainder in fee is given at the death of the life tenant to 'such person or persons as shall be her heir or heirs-at-law of land held by her in fee-simple;' that is, to those who by law would inherit the property at her death if she died intestate seized thereof in fee. Who those persons will be cannot now be determined. *Nemo est haeres viventis.* She has heirs apparent and presumptive now, but whether those persons will be her heirs at her death and so entitled to the remainder, cannot be told until that time arrives. The testator manifestly did not refer to any particular individual or individuals, or class of existing persons, by the language which he employed, but used the word

'heir' in the technical sense, as is particularly evident from his use of the future tense—'such person or persons as shall be her heir or heirs-at-law, &c.'—that is, such person or persons as shall be her heir or heirs-at-law when she dies."

It appears that the estate held in trust for Morton P. Robinson, the life tenant, and his "heirs" after him, is personal property; but that makes no difference, for two reasons—*first,* because when personal property is given to "heirs" by a will, in the absence of a clear intention to the contrary, the word "heirs" is construed to mean next of kin (*Trenton Trust and Safe Deposit Co.* v. *Donnelly, 65 N. J. Eq. 119, 124*), and there is nothing in this will to take it out of the general rule, and *second,* because the remainder is a contingent one, quite irrespective of whether the property is real or personal.

Morton P. Robinson, the life tenant, is still living, and it cannot be said who will be his heirs-at-law or next of kin at the time of his death. He has children who, if they survive him, will be both his heirs-at-law and next of kin, but he may survive them, and, therefore, neither his heirs-at-law nor next of kin can be ascertained until his decease.

The bill must be dismissed with costs, including a counsel fee to counsel for the infants, to be paid out of the trustee's estate and to be determined on application on notice.