JANUARY TERM, 1832.

John Andress v. Philip P. Weller and Jacob Miller.

It is not necessary that a man should be possessed of a mind naturally strong, or that the powers of his mind or memory should be wholly unimpaired, to enable him to make a valid will.

The opinion of Washington, justice, in the case of *Den* v. *Vancleve*, 4 *Wash.* 262, approved and adopted as prescribing the true standard of testamentary capacity.

When the testator's habits of intoxication are not such as to render him habitually incompetent for the transaction of business, it is necessary for the party setting up the incapacity of the testator on the ground of casual intoxication, to show its existence at the time of executing the will.

An omission made by a scrivener in preparing a will of real estate, cannot be supplied by parol evidence.

It seems that an omission made in preparing a will of personal estate, may be supplied, or a mistake corrected, by parol proof of the omission, aided by the written instructions to the scrivener, but not by parol evidence alone.

Appeal from a decree of the orphans' court of the county of Warren, admitting to probate a paper writing purporting to be the last will and testament of Barnet Andress, deceased. The will was exhibited for probate by Philip P. Weller and Jacob Miller, named therein as executors. The caveat was filed by John Andress, one of the sons of the testator, who appealed from the decree.

*Wall*, for appellant.

*Morris*, for respondent.

The Ordinary. The testator resided for many years in what is now the county of Warren. On the sixteenth of December, eighteen hundred and twenty-six, he made and executed his last will and testament; and in the month of March, eighteen hundred and thirty, he died, without having revoked or in any wise altered the same. John Andress, one of the sons

[Andress v. Weller and Miller.]

of the testator, filed a caveat against proving the same. The matter came on to be heard before the orphans' court, and after full investigation, the will was admitted to probate. The caveator appealed from this decree; and the cause having been regularly brought up before this court, was submitted without argument.

The first question that arises under the appeal is, whether the testator was competent to execute a will. It is shown, that when the will was made he was about eighty years of age, and that his health had for some time before been rather declining, and also that his memory was less retentive than formerly. It appears, too, that he had no great strength of mind at any time, and that he was ignorant and unlearned, being able neither to read nor write.

On the part of the executors it is shown, that the testator, at the time of making the will, was in his ordinary mind, and of sufficient capacity to transact his ordinary business. He went voluntarily from his own dwelling to the house of William Wilson, esquire, for the purpose of having his will drawn. The distance is between three and four miles, and he went on foot in the month of December. He gave to Mr. Wilson the necessary instructions for drawing the will, and not being able to have it prepared on that day, he proceeded on and spent the night with one of his daughters. In the morning he returned, and in the course of the day the will was prepared for execution. It was then read to him twice, and afterwards executed in due form, in the presence of three subscribing witnesses. These witnesses all agree in asserting his capacity. They represent him as having been rational, and as understanding perfectly what he was doing.

Taking the whole of the testimony together on this point, I entertain no doubt as to the competency of the testator. It is not necessary that a man should be possessed of a mind naturally strong, or that the powers of his mind or memory should be wholly unimpaired, to enable him to make a valid will. Such a standard of testamentary capacity would produce infinite mischief to society. It is not the standard adopted by this court.

[Andress v. Weller and Miller.]

I do not deem it necessary on this occasion to review the cases on the subject of testamentary capacity. The subject has of late been frequently agitated. In the case of *Tace Wallace,*[*] the leading authorities were reviewed, and the doctrine held by judge Washington, in the case of *Den* v. *Vancleve,* was adopted in substance by the court. The judge in that case says, that "He (the testator) must, in the language of the law, be possessed of a sound and disposing mind and memory. He must have memory. A man in whom this faculty is totally extinguished, cannot be said to possess understanding to any degree whatever, or for any purpose. But his memory may be very imperfect; it may be greatly impaired by age or disease; he may not be able at all times to recollect the names, the persons or the families of those with whom he had been intimately acquainted; may at times ask idle questions, and repeat those which had before been asked and answered; and yet his understanding be sufficiently sound for many of the ordinary transactions of life. He may not have sufficient strength of memory and vigor of intellect to make and digest all the parts of a contract, and yet be competent to direct the distribution of his property by will. This is a subject which he may possibly have often thought of; and there is probably no person who has not arranged such a disposition in his mind before he committed it to writing. The question is not so much what was the degree of memory possessed by the testator? as this, Had he a disposing memory? Was he capable of recollecting the property he was about to bequeath, the manner of distributing at, and the objects of his bounty? To sum up the whole in the most simple and intelligible form, Were his mind and memory sufficiently sound to enable him to know and understand the business in which he was engaged, at the time when he executed his will?"

In the more recent case of the appeal on the will of *John Maxwell,* chief justice Ewing and justice Drake, sitting for the ordinary, adopted the same doctrine after a very elaborate and able review of the cases bearing on the subject. It may, there-

[*] See ante, page 572.

fore, be considered as the settled law of the court. As I do not consider there is any serious difficulty on this part of the case, and as my opinion is in accordance with the decree of the court below, I forbear going into any formal or particular review of the testimony, being satisfied that the weight of the evidence is very decidedly in favor of the competency of the testator.

Some effort appears to have been made by the caveators to show that the testator was incapacitated by reason of intoxication. The evidence discloses the fact, that he would sometimes drink too much ; but so far as it seeks to establish that the testator, at the time he directed or executed the will, was in a state of ebriety, it has utterly failed.

Thomas Fine, who was one of the instrumental witnesses, says he does " not recollect any liquor being present at the time of signing the will ;" and also, that the testator did not appear in liquor the evening of executing the will. The testator stayed with this witness and spent the night with him after the will was executed, and if he was intoxicated it could not have escaped observation.

Daniel B. Hartley, another testamentary witness, says he took him (the testator) to be a sober man, and saw nothing to the contrary the day the will was executed. And William Wilson, who drew the will, states expressly, that the testator was not in liquor at the time of giving the instructions, or at the time of his executing the will.

On the other hand, John J. Kitcher, a witness for the caveator, testifies, that he saw the testator and spoke to him, as he was going from esquire Wilson's to Fine's house, in company with Fine. He had not much conversation with him. Testator asked witness how his family was, and passed on. " He appeared to be a little intoxicated, by his discourse." It is obvious that the witness had but small opportunity to judge of the situation of the testator ; and when it is recollected that he is entirely mistaken as to the time, and some of the circumstances attending the transaction, it is plain that his testimony can weigh but little against that already adverted to.

PREROGATIVE COURT,

[Andress v. Weller and Miller.]

It is not pretended that the testator's habits of intoxication, if in his case the expression may be allowed, were of such a character as to render him habitually incompetent to the transaction of business. And consequently it is necessary for the caveator, who urges the incapacity on the ground of casual intoxication, to show its existence at the very time of executing the will, and not at a time before or after. This he has altogether failed to do.

There appears also to have been some attempt to show that the testator, who lived with Martin Andress, the principal devisee, was under his influence, and that the will was made by his procurement. This attempt, if really intended, has also failed, and does not, as I conceive, require any formal investigation at the hands of the court.

There is another ground taken in the petition of appeal, for setting aside the decree of the orphans' court. It is this: that William Wilson, one of the instrumental witnesses, and who drew the will, testified in his examination before the orphans' court, that the testator was an unlearned man, who could neither read nor write; and that in his instructions to him to draw his will he directed the said William Wilson to charge certain specific legacies, amounting to one thousand four hundred and forty dollars, on the real estate to be devised to his son, Martin Andress; that the said William Wilson neglected to make this charge; and the paper writing, in its present form, was imposed on the testator as his will. And in consequence of the personal property being insufficient to pay said legacies, they cannot be recovered, but must abate proportionably.

I am strongly inclined to conclude, from the evidence, that there has been an omission on the part of the scrivener who prepared the will, and that these legacies ought to have been charged on the land. But there is no pretence of any fraud or imposition, and the question that arises for consideration is, not as to the effect of the evidence, but its admissibility. If the testimony is admissible, then I should incline to say that the fact was shown, and that the will, as it now appears, could not be taken as the will of the testator, without supplying the omission.

[Andress v. Weller and Miller.]

Cases have occurred in the ecclesiastical courts of England, where omissions have been supplied and mistakes corrected. And what is to be taken as sufficient evidence of the fact, is a point that has been frequently discussed. Parol evidence has been admitted, but with very great caution. The courts have sometimes placed themselves upon the written instructions given, and in case of a mistake or omission, they have admitted the instructions to stand as part of the will. Thus in the case of *Gerrard* v. *Gerrard*, Prerog. 1789, the person drawing the will was instructed in writing by the testator to insert his wife as residuary legatee. The name of the wife not being known to the attorney, a blank was left for it, and it was executed by the testator with that omission. These facts were proved, and also that the testator had subsequently stated that he had left his wife executory and residuary legatee, and the defect was supplied.

The case of *Damer* v. *Jansen*, cited 3 *Phill.* 434, is more analagous to the present. The whole clause by which the testator intended to appoint his younger daughter residuary legatee, was accidentally omitted; and it was decided in the court of delegates that the clause, together with the executed will, should be taken and held as the last will of the deceased. It is to be observed, however, that in that case, as in the case of *Gerrard*, before cited, the instructions were in writing, and that parol evidence was not alone relied on.

In the later case of *Fawcett* v. *Jones*, 3 *Phill.* 434, it was attempted to introduce parol evidence to show that a variation which had taken place between the instructions and the will, was not directed by the deceased, or if directed, that she did not understand and approve it; and this was to be established by the recollection of a witness, fifteen years after the instrument was executed. The evidence was rejected. Sir John Nicholl, in giving his opinion, remarks upon the case of *Damer* v. *Jansen*, in which evidence was admitted of an averment against the formal execution of the instrument, and says, that notwithstanding the peculiar circumstances of that case, there was considerable hesitation entertained by the court in the first instance, as to the

77

decision upon the point; and he adds, that that case was considered as going to the utmost length to which the court could go with any degree of security.

In the case now before me, the evidence offered is simply parol evidence—consisting of the recollection of the person that drew the will, and the testimony of Stephen Andress; who says that the testator, in a conversation, in eighteen hundred and twenty-eight, told him he intended so to fix his business as that the one to whom he left his farm should pay out to the others "as he wished it." And I find no authority, even in cases of wills of personal estate, that will justify me in receiving and acting upon such testimony. But this is a will of lands. The farm is devised to Martin Andress, and it is sought to charge that farm with the payment of fourteen hundred dollars; or, in other words, to diminish the devise by that amount, and purely upon parol evidence. This is altogether inadmissible. It would not only occasion an alarming insecurity in the testamentary disposition of property, but would violate the plainest principles of the law.

It may operate unequally to order the will to probate under existing circumstances, but I see no alternative. In the language of the learned judge,* whose opinion I have already cited, It is much safer for this court to adhere to the plain broad landmarks of the law. It rarely happens that a general rule is broken in upon for the relief of a particular case, that such breach of the general rule is not found to be afterwards attended with infinite mischief.

. Let the decree of the orphans' court be affirmed.


NOTE, by the Ordinary. I understand that in this case the devisee has given bonds for the payment of the legacies intended to be secured by the land; which bonds are to be delivered to the legatees on the establishment of the will. This is right and just, and relieves the case from difficulty, *in foro conscientiæ.*

---

, * Sir John Nicholl, in *Fawcett v. Jones,* 3 *Phill.* 434; 1 *Eng. Ec. Rep.* 457.