Nevius v. Martin.

----

PETER NEVIUS v. JULIANNA MARTIN ET AL.

1. A devise of "one acre of land joining the road leading from Metuchen to Bonhamptown on the west, and my house lot on the east"—*held*, that the house lot was only descriptive of one of the boundaries of the one acre lot, and that the house lot did not pass by such devise.

2. If there be no latent ambiguity, the construction of a will must be drawn from the words, and parol testimony cannot be admitted to supply, contradict, enlarge, or vary the words, or to explain the intention of the testator.

----

In ejectment. Error to the Circuit Court of the county of Middlesex.

David P. Martin, in and by his last will and testament, devised (among other things) as follows: "*Item.* After the death of my said wife, I give and bequeath to my nephew, Peter Nevius, one acre of land joining the road leading from Metuchen to Bonhamptown on the west, and my house lot on the east. But if said Peter Nevius should die before the age of twenty-one years, I give said lot to his brother, John Nevius."

The wife of the testator having died, and Peter Nevius having attained the age of twenty-one years, brought this action to recover the lot, called in the above devise the house lot, containing about 14½ acres, claiming to be entitled to it as devisee, under a proper and just construction of said devise. Upon the trial, after reading the will in evidence, he offered to prove, by the scrivener who drew the will, that by

the instruction given to him by the testator at the time of writing the will, he was directed to devise the lot in question, containing about fourteen acres, to the plaintiff in fee—and that, by the language of the will, he believed that such intent was expressed.

This evidence was objected to and overruled. And the court, being of opinion that the plaintiff had made no title to the premises under the will, directed him to be called. To these several rulings of the court the plaintiff excepted, and a bill of exceptions was sealed. The case now comes up upon a writ of error, and the question presented is, whether, in the judgment and proceedings of the court below, there is error.

For the plaintiff, *W. H. Leupp*.

For the defendant, *H. V. Speer*.

HAINES, J. The plaintiff, claiming to be the devisee of two lots of land, one containing one acre, and the other about fourteen acres, in the county of Middlesex, under the will of David P. Martin, deceased, brought his action of ejectment, for the recovery of the fourteen acre lot, in the Circuit Court of that county.

The language of the clause of the will under which he claims is as follows: "*Item.* I give and bequeath to my nephew, Peter Nevius, one acre of land, joining the road leading from Metuchen to Bonhamptown, on the west, and my house lot on the east; but if the said Peter Nevius should die before the age of twenty-one, I give the said lot to his brother, John Nevius."

It is admitted that the testator, at the date of the will, owned a lot of about one acre, which he purchased of Jonathan Acken and wife, adjoining the road leading from Metuchen to Bonhamptown on the west, and, also, his house lot on the east; that when conveyed to the testator, it was separated by fence from the house lot; but after the purchase, the fence was suffered to go down, and at the death of

the testator, and for some time before, there was no fence between the one acre lot and the house lot; that the house lot was that on which the testator lived, lying east of the one acre lot, and contained fourteen acres and over.

The plaintiff offered to prove, by the person who wrote the will, and was a subscribing witness to it, that by the instructions given to the witness by the testator, at the time of writing the will, he was directed to devise the lot in question, containing about fourteen acres, to the plaintiff in fee; and that, by the language of the will, he believed that such intent was expressed.

The testimony so offered was overruled by the court, and that ruling having been excepted to, is assigned for error.

On the part of the plaintiff, it is insisted that the evidence should have been received on the ground of a mistake in the will, to show that the scrivener did not use proper language to express the intention of the testator.

I know of no rule of law, nor any adjudged case, on which parol testimony has been or can be received to correct a mistake in a will. By law, wills to pass real estate must be in writing, signed and published by the testator in the presence of witnesses; and it would be inconsistent with that law to permit parol proof to be introduced to contradict, add to, or explain their contents. This principle requires an inflexible adherence to it, even if the consequence should be a partial, or even total failure of the testator's intention.

The formalities so carefully provided would be of no value; the statute itself would be virtually repealed, if when the written instrument is supposed not to express the clear intention of the testator, the deficiency may be supplied, and its mistakes corrected by extrinsic evidence. No principle connected with the law of wills is more firmly established or more familiar in its application than this; and it seems to have been acted upon by judges, of early and of later times as well, with a cordiality and steadiness, which shows how entirely it coincided with their own views. 1 *Jarman on Wills* 349.

A firm adherence to the rule is necessary to avoid the consequences of the misapprehension of the witness, and the danger of offering temptation to perjury. This very case is a fair example of the hazard of such testimony, where a witness is supposed to remember accurately in eighteen hundred and sixty, the verbal instructions received from the testator in eighteen hundred and forty-two. ,

The authorities on the subject are numerous, and all concurring.

It will suffice to refer to a single representative case, which is regarded as a leading authority. In *Brown* v. *Selwin, Cas. Temp. Talbot* 210, found also in *Bro. Parl. cases* 607, the testator, having bequeathed the residue of his personal estate to two persons, whom he appointed his executors, and one of whom was indebted to him by bond, it was attempted to be proved, by the evidence of the person who drew the will, that he received written instructions to release the bond debt by the will, but that he refused to do so, under the impression that the appointment of the obligor to be one of the executors extinguished the debt. Lord Talbot held the evidence to be inadmissible, and his decree was affirmed in the House of Lords.

To the same effect will be found many English cases. And *Mann* v. *Mann,* 14 *Johns. R.* 1 ; *Jackson* v. *Sill,* 11 *Johns. R.* 201 ; *Tucker* v. *The Seamen's Aid Society,* 7 *Metc.* 189 ; *Hand* v. *Hoffman,* 3 *Halst.* 71, are fair examples of the American cases.

But it is further insisted that the testimony was admissible to show or to remove an ambiguity.

If so, it must be a latent ambiguity, one which does not appear on the face of the will, but lies hidden in the person or thing or subject of which it treats. No parol evidence or evidence *dehors* can be received, unless it be to show a latent ambiguity, or to remove one. The *ambiguitas patens* raise no question for a jury or for the aid of witnesses, but is one of pure legal construction for the court. *Hand* v. *Hoffman,* 3 *Halst. R.* 78 ; *Den* v. *Cubberly,* 7 *Halst. R.* 308.

Is there a latent ambiguity in the clause of the will in question?

The language is: "I give and bequeath to my nephew, Peter Nevius, one acre of land joining the road leading from Metuchen to Bonhamtown on the west, and my house lot on the east." This seems to be very explicit and appropriate language to devise one acre of land, describing it as bounded by the road on the west, and by the house lot on the east. It is as clear as if the expression had been, joining the road on the west, and joining the house lot on the east. Should any possible doubt arise from that part, it is removed by what follows, namely: " but if the said Peter Nevius should die before the age of twenty-one years, I give said lot to his brother, John Nevius." This is a devise over of one lot, and not of two, and clearly manifests the intention of the testator. And, although at the time of making the will, or before or afterwards, the fences between the lots were removed, and all the land occupied as one tract, yet the testator had in his mind two distinct lots, and as they were when he purchased the one acre lot, and he uses the terms " one acre of land " adjoining the road " and my house lot."

I can see no intention of devising two lots, nor any ambiguity, latent or patent, hidden or open.

I think the testimony was properly overruled, and that no error is shown.

The judgment must therefore be affirmed with costs.

OGDEN, J. The plaintiff claimed the premises in question, being the house lot of David R. Martin, deceased, by and through the will of said Martin.

In support of his title, he gave the will and probate thereof in evidence before the jury. After ordering his debts to be paid, the testator gave to his wife, in lieu of her dower, some personal estate, and the use, during her natural life, of all his real estate, consisting of a house and fourteen and a half acres, where he then dwelt, with all the appurtenances; one wood lot, containing three and a half acres, giving its bounda-

ries, and two lots of salt meadow, stating that the wood lot and salt meadow were devised to him by his father. After giving directions about the sale of a nine acre lot, and the disposal of the proceeds of the sale, he made the following devise, it being the clause in the will through which the plaintiff claims title:

Item. "After the death of my said wife, I give and bequeath to my nephew, Peter Nevius, one acre of land, joining the road leading from Metuchen to Bonhamtown on the west, and my house lot on the east; but if said Peter Nevius should die before the age of twenty-one, I give said lot to his brother, John Nevius." He then directed his executors to sell all his real estate after the death of his wife.

The plaintiff contended that the devise to him embraced the house lot of fourteen and a half acres, insisting that the description of the one acre was full, by placing it on the road leading from Metuchen to Bonhamtown, and that the remainder of the sentence was an additional devise to him of the house lot.

In support of his claim, his counsel proposed to prove by Abraham D. Titsworth, the scrivener, who drew the will at testator's request, that by the instructions given to him by the testator, at the time of writing the will, he was directed to devise the lot in question, containing about fourteen acres, to the plaintiff in fee, and that, by the language in that respect used in said will, he believed that such intent was expressed.

The counsel for the defendants objected to the admissibility of the oral testimony, and the court overruled the offer, and rejected the testimony as illegal in support of the issue. An exception was prayed, by the counsel of the plaintiff, to the decision of the court, which was allowed and sealed.

Was the testimony legally admissible? If so, on what principle?

The case states that the testator, at the date of the will, owned a lot of about one acre, which he purchased of Jonathan Acken and wife, by deed, June 17th, 1840; that it ad-

joins the road leading from Metuchen to Bonhamtown on the west, and testator's house lot on the east; that when conveyed to the testator, it was separated by a fence from the house lot; but after the purchase, the fence was suffered to go down, and at or some time before the testator's death there was no fence between the two. The testator lived on the *house lot,* which lay east of the one acre lot, and contained over fourteen acres.

The will is dated July 15th, 1842.

This testimony was offered to remove a latent ambiguity in the will.

Is there such an ambiguity in the words of this will, rendered so by extrinsic and collateral matter out of the instrument itself?

Does any ambiguity lie hidden in the persons or subjects whereof the will speaks? Does not the question raised by the plaintiff grow out of the construction of the language employed by the testator?

If the word *and* is construed to apply to the description of the one acre lot the plaintiff's case falls. If it be construed as describing the house lot on the east as a subject of devise to Peter, then the plaintiff's title is made out. How could a conversation between the testator and the scrivener aid in construing the sentence? There is no uncertain person to take, and no uncertain thing described, and no identification of person or subject of devise required. The one acre and the house lot are certain subjects of devise, and Peter was a certain man, and they cannot be rendered more certain by proof of extraneous facts and surrounding circumstances.

The case does not fall within the rule, which allows the introduction of oral testimony to explain the written language. If there be no latent ambiguity, the construction of a will must be drawn from the words; and parol evidence cannot be admitted to supply, contradict, enlarge, or vary the words, or to explain the intention of the testator. 3 *Halst.* 72, *Evidence.*

Nevius v. Martin.

If any ambiguity exists here, it is patent on the face of the will, and was a question of judicial construction for the court.

Again.    Should the testimony have been admitted to correct alleged mistakes of the scrivener?

The case cited in 7 *Johnson*, of *Johnson* v. *Clark*, does not support the proposition.    "The power of devising by last will and testament would be deeply impaired by accepting any other evidence of the testator's intention, than what is to be gathered from the will itself," if it can have an effective operation without the aid of the testimony.

A different rule would lead to the making of wills in court, and not to the legal construction of them.

The present case furnishes a strong illustration of the wisdom and safety of the rule.

In 1842, the testator made his will, in language capable of receiving an effective operation in consistency with the surrounding facts, and eighteen years afterwards, the scrivener is called to testify that he was instructed to draw a different will, and supposed that the language which he employed created a devise different from that which a proper construction of the clause will support.

The admission of the testimony would have tended to make a new will for the testator.

I am clearly of opinion that there was no error in rejecting the testimony.

The court gave a proper construction to the clause in the will, by ruling that the introduction into it of the house lot, was only descriptive of one of the boundaries of the one acre lot, and that the house lot did not pass to the plaintiff by the devise therein made to him, and properly ordered the plaintiff to be called.

The judgment below must be affirmed with costs.

VREDENBURGH, J., concurred.

Judgment affirmed.

CITED in *Griscom* v. *Evens*, 11 *Vroom* 408.