Essie T. Mayer, trustee of Henry W. McCormick, complainant-appellant,

*v.*

Garrett R. Tucker and Henry W. McCormick, an infant, defendants-respondents.

[Argued February 10th, 1928.   Decided May 14th, 1928.]

On October 14th, 1914, E. W. McC. executed a deed of trust by which she transferred to a sister certain certificates of stock in trust for her son, H. W. McC. The deed contained a power of revocation. E. W. McC. then married G. R. T. and by him had three children. On September 5th, 1924, she made a will which contained no reference to the deed of trust. She died on July 13th, 1926. The certificates of stock comprising the trust estate were taken by G. W. T., the husband and executor of the will. Upon a bill filed by the trustee to obtain the delivery of said certificates and a declaration that the same were held in trust: *Held* (1) that the deed of trust of October 14th, 1914, was a complete and valid trust; (2) that it was not revoked by the will of September 5th, 1924; (3) that the words in the will "my estate" referred to the testatrix' own estate and did not include the estate held under the deed of trust; (4) that no latent ambiguity existed in the will which required the admission of testimony to explain, and (5) that if it was the purpose of E. W. T. (formerly E. W. McC.) to revoke the trust agreement this purpose failed as the power of revocation contained in the deed of trust could only be exercised during the lifetime of the donor to be effective.

On appeal from a decree of the court of chancery.

*Mr. William I. Lewis,* for the appellant.

*Messrs. Perkins & Drewen,* for the respondents.

The opinion of the court was delivered by

Katzenbach, J.

This is an appeal from final decree of the court of chancery. The decree adjudges that the will of Elizabeth W. M. Tucker, executed on September 5th, 1924, revoked a deed of trust made by her on October 14th, 1914.

The testatrix died on July 13th, 1926. The decree provides that the trustee under the deed of trust shall assign and transfer all the securities forming said trust estate to Garrett R. Tucker, the executor of Mrs. Tucker's will, and execute all papers and documents necessary to effectuate said transfer. For a proper understanding of the case it is necessary to go somewhat into the history of the deed of trust, the making of the will, and the relations of the parties to this litigation.

The settlor of the trust was Elizabeth W. McCormick. She was a widow. Her husband, Henry J. McCormick, a New York lawyer, died in 1912. He bequeathed to Mrs. McCormick a number of shares of the capital stock of the United States Gypsum Company. There was one child of this marriage, Henry W. McCormick, an infant. In 1914 one Garrett R. Tucker became ardently attentive to Mrs. McCormick. Within a short time after their introduction Mr. Tucker was engaged to Mrs. McCormick. The date for the wedding was soon announced. The family of Mrs. McCormick were antagonistic to the suit of Mr. Tucker. They objected to the speed of the courtship. They had heard rumors regarding Mr. Tucker which were disquieting. They were desirous that before the marriage there should be some provision made by Mrs. McCormick from her estate for the support, maintenance and education of her son, Henry W. McCormick. Mrs. McCormick heeded the advice of her family that some provision of this character should be made for her son. On October 14th, 1914, she made an agreement by which she assigned, transferred and set over to Essie T. Watters, a sister, three hundred and fifty shares of the preferred capital stock of the United States Gypsum Company to be held in trust, the income to be used for the support and education of her son, the said Henry W. McCormick, until he arrived at the age of twenty-one years, the income was then to be paid to him until he was twenty-five years of age; upon arriving at the age of twenty-five the trust fund was to be transferred to him. In the trust agreement there was a power of revocation in these words: "The said party of the first part hereby reserves the

right and power to revoke the trust hereby created." The shares of stock were duly transferred by Mrs. McCormick to the trustee. Seven days after the execution of the deed of trust Mrs. McCormick was married to Mr. Tucker.

Mrs. Tucker had three children by Mr. Tucker. The United States Gypsum Company prospered in its business. There were added to the principal of the trust estate one thousand six hundred and ninety shares of the common capital stock of the gypsum company, issued as stock dividends. The estate of Mrs. Tucker had also been enhanced by the prosperity of the gypsum company, as her first husband's estate had consisted almost entirely of the capital stock of this company and only a part of the shares left her by Mr. McCormick had been included in the deed of trust of October 14th, 1914. Mrs. Tucker died on July 13th, 1926. The record is not clear as to the amount of the estate but at the argument of this cause it was stated to be approximately $500,000.

On September 5th, 1924, Mrs. Tucker executed her last will and testament. She was then a resident of Brooklyn. The will was drawn by Frank B. Holmes, esquire, a lawyer practicing in Stroudsburg, Pennsylvania. Mrs. Tucker was at the time of executing the will living temporarily near Stroudsburg. By the terms of the will she gave one-fifth of her estate to her husband. The residue she gave to her husband in trust to divide into four equal parts, one of said parts to be held by the trustee for each of her four children. The will contained no revocation of the deed of trust. No revocation of the deed of trust was ever expressly made.

In January, 1925, Mr. and Mrs. Tucker moved from Brooklyn to Ridgewood, New Jersey. The securities of Mrs. Tucker and the stock certificates comprising the trust fund were placed in a safe deposit box in the vaults of a Paterson bank. Mrs. Tucker, as has been stated, died on July 13th, 1926. Within a few hours after Mrs. Tucker's death Mr. Tucker obtained, by not revealing to the bank's officers the fact of the death of Mrs. Tucker, access to the safe deposit box and removed therefrom the certificates standing in the name of

Essie T. Watters (now Essie T. W. Mayer). Mr. Tucker refused upon the demand of Mrs. Mayer to surrender to her the certificates of stock held under the deed of trust. The situation appears to have been aggravated by a second whirlwind courtship prosecuted by Mr. Tucker resulting in his remarriage within four months from the date of Mrs. Tucker's death. Mrs. Mayer than filed in the court of chancery the bill in the present case to secure the return of the stock certificates and to obtain a declaration from the court that the same were held as a trust fund under the deed of trust of October 14th, 1914. The answer filed by Mr. Tucker set up that the said certificates of stock were assets of his wife's estate and that she had in fact and in law revoked the said trust agreement by the execution of the will of September 5th, 1924. An amended answer was later filed in which the defense was interposed that Mrs. McCormick was unduly influenced by her family in making the deed of trust for the benefit of her son, Henry W. McCormick.

The vice-chancellor to whom the cause was referred for hearing held that a complete and valid trust had been created. He, however, held that the will of Mrs. Tucker operated to revoke the trust and that this was shown by proof of extrinsic facts; that when she spoke in her will of "my estate" it was intended to refer to that estate over which she had retained the power of revocation as well as her untrammelled property. The evidence of so-called extrinsic circumstances, which was objected to, he declared admissible for the purpose of resolving an alleged latent ambiguity.

We agree with the learned vice-chancellor that the instrument of October 14th, 1914, executed by the then Mrs. McCormick, created a complete and valid trust. We differ, however, with his view that the deed of trust was revoked by the will of Mrs. Tucker made on September 5th, 1924. We are of the opinion that in the first place there is insufficient evidence either in the will or in the so-called extrinsic circumstances to warrant the conclusion that the execution of the will revoked the deed of trust. In the second place, we consider that the deed of trust could not be revoked by a will as

the right of revocation had to be exercised during the life of the donor.

When Mrs. Tucker consulted, in September, 1924, Mr. Holmes about drawing her will, she submitted to him a copy of the trust agreement. He was, as we gather from his testimony, a lawyer of high standing. He was experienced. He had been practicing law for thirty-four years. He went into the matter of the trust agreement with considerable detail and advised her that to obtain title to the certificates of stock the deed of trust must be revoked. Mrs. Tucker did not desire to take such action at that time. One of the reasons appears to have related to the tax upon a transfer of the certificates. With the knowledge which Mrs. Tucker obtained in this interview she took no action to exercise the power of revocation reserved by her in the trust agreement. She expressed to Mr. Holmes no intention of revoking the trust agreement. From this testimony it seems clear to us that Mrs. Tucker did not consider the property held under the deed of trust, although she had used to a great extent the income therefrom, a part of her estate and that she also wished the situation regarding the agreement to remain as it was. It is immaterial what motives influenced her action. It may well be that upon reflection she considered it only fair that the child of her first husband should have a larger part of the money which his father had accumulated or laid the foundation for, than the children which had been born as the result of her union with Mr. Tucker.

In the opinion below the court held that the words "my estate," used in the will, were intended to refer to that estate over which Mrs. Tucker retained the power of revocation as well as her untrammelled property. The case of *Paul* v. *Paul, 99 N. J. Eq. 498,* is cited as sustaining this proposition. An examination of this case will show that the facts are different from those in the present case. In the *Paul Case* the situation presented was that the testatrix had a power to dispose of a trust fund by will. She had practically no estate. In her will the testatrix made a large number of bequests ranging from $300 to $3,000 in amount and aggregating ap-

proximately the amount of the trust fund. It was held that the will indicated an intention to exercise the power of appointment. In the present case the testatrix had a large estate to dispose of which belonged to her absolutely. In the case of *Farnum* v. *Pennsylvania Co. for Insurance on Lives, &c., 87 N. J. Eq. 108,* it was held that the general residuary bequest of "my estate" referred to the testator's own estate and not property over which she had a power of appointment.

We are also of the opinion that in the instant case there was no latent ambiguity in the words "my estate" which justified the reception of the evidence which was admitted. In the case of *Griscom* v. *Evens, 40 N. J. Law 402,* Mr. Justice Depue said:

"The functions of the court are to ascertain the intention of the testator from the language of the will. Extrinsic evidence may be resorted to, which, in its nature and effect, is simply explanatory of what the testator has written, but no evidence can be received for the purpose of showing what he intended to have written. In every case of a controverted construction, the sole question is *non quod voluit sed quod dixit*. Extrinsic evidence of the circumstances, situation and surroundings of the testator, and of his property, is legitimate to place the court which expounds the will in the situation of the testator who made it, and thus enable the court to understand the meaning and application of the language he has adopted; but the testator's intention must ultimately be determined from the language of the instrument, as explained by such extrinsic evidence, and no proof, however conclusive in its nature, can be admitted with a view of setting up an intention inconsistent with the writing itself."

In the will of Mrs. Tucker there was no express revocation of the deed of trust. It is not mentioned in the will. There is nothing we can see in the conduct of Mrs. Tucker which justified the conclusion of the court below that the trust agreement was revoked by the will.

But if it was the purpose of Mrs. Tucker to revoke the trust agreement in her will, it seems to us that this purpose failed. In the case of *Stone* v. *Hackett, Excr., 12 Gray*

(*Mass.*) *227,* a similar situation was presented. There one Kittredge appointed a Miss Stone as trustee of a certain portion of his property, the trust estate to be devoted to the purposes specified in the instrument. Kittredge retained "the right to modify said uses or to revoke said trust." The question presented was whether the trust was revoked by his will. Mr. Justice Bigelow, writing the opinion of the court, over which Chief-Justice Shaw then presided, states this rule on page 232 of the opinion:

"A power of revocation does not in any degree affect the legal title to the property. That passes to the donee and remains vested for the purposes of the trust, notwithstanding the existence of a right to revoke it. If this right is never exercised according to the terms in which it is reserved until after the death of the donor, it can have no effect on the validity of the trust or the right of the trustee to hold the property."

The same principle is set out in *26 R. C. L. 1206,* where it is stated that:

"If the right of revocation is not exercised during the lifetime of the donor or other person in whose favor it was reserved, the validity of the trust remains unaffected as though there never had been a reserved right of revocation."

The cases cited in the footnote to this statement fully support it. In view of this principle, which seems to us to be a sound one, it would seem immaterial whether Mrs. Tucker intended by her will to exercise the power of revocation or not.

The views herein expressed lead to a reversal of the decree of the court of chancery. The case is remanded to that court for the purpose of entering therein a decree in conformity with this opinion.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 15.