21 N.J. Super. 479 (1952)
91 A.2d 368
ANTHONY DE BENEDICTIS AND JULIO DE BENEDICTIS, PLAINTIFFS,
v.
LUCY DE BENEDICTIS, EXECUTRIX UNDER THE WILL OF JOHN DE BENEDICTIS, DECEASED, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided September 18, 1952.
*480 Mr. John R. Bennie, attorney for plaintiffs.
Mr. Edward V. Martino, attorney for defendant.
HANEMAN, J.S.C.
This suit involves the construction of the will of John De Benedictis, deceased. It has particular reference to paragraphs Second and Third, which read as follows:
"Second: I give, devise and bequeath unto my wife, Lucy De Benedictis, all my real and personal estate situate in Italy.
Third: All the rest remainder and residue of all my real and personal estate whatsoever and wheresoever situate."
*481 It is the contention of the plaintiffs that the testator having failed to designate a devisee or legatee in paragraph Third of his will, died intestate as to the residue of his estate. The defendant, however, contends that the testator intended not only to devise and bequeath to Lucy De Benedictis all of his real and personal estate situate in Italy, but all the rest, residue and remainder of his estate, wheresoever situate, as well. Since such a purpose cannot be plainly ascertained from the instrument itself, defendant has proffered oral testimony, the object of which is to demonstrate the manner in which the testator intended to dispose of his estate. Otherwise stated, the testimony as so proffered, it is asserted, will prove that which the testator had in mind when he prepared his will.
At the pretrial conference it was stipulated that the question of the admissibility of this evidence should be preliminarily decided by the court. It was further stipulated that if the objection to the testimony were sustained, then this court should decide this matter upon the will itself, without the production of any further evidence.
Extrinsic evidence which, in its nature and effect, is simply explanatory of what the testator has written, may be resorted to in an attempt to construe a will, but no evidence can be received for the purpose of showing what he had intended to have written. Such evidence may not be used to supplement a will nor to show what a testator meant to say, but may be used to show what he meant by what he actually did say, and may be used to enable the court to understand the testator's "meaning" but not to understand his "intention." The word "meaning" as herein used connotes a demonstration of the significance of a word, phrase, clause, etc., actually expressed by the testator. The word "intention" as herein used connotes his will, desire or volition towards expressing an idea in the testament but which he failed to indicate by language in the will. It is not the secret working of the mind of the testator for which such testimony may be used to ascertain how he intended to dispose *482 of his property, other than the mode in which he expressed it, but rather to ascertain what he did mean by the words he used.
The function of the court is to ascertain the intention of the testator from the language of the will. The ambiguity which is explainable must be latent. If there is no latent ambiguity, the construction of the will must be drawn from the words of the will, and parol evidence cannot be admitted to supply, contradict, enlarge, vary, or change the language used, or to explain the intention of the testator.
In Farnum v. Pennsylvania Co. for Ins., &c., 87 N.J. Eq. 108, at page 114 (Ch. 1916), affirmed 87 N.J. Eq. 652 (E. & A. 1917), the court said as follows:
"Parol evidence of a testator's declarations, or of representations made to him, tending to show his meaning and intention or under standing of his will, different from its legal significance and effect, has been uniformly rejected by the courts as incompetent. By law, wills must be in writing, signed and published by the testator in the presence of witnesses; and it would be inconsistent with that law to permit parol proof to be introduced to contradict, add to, or explain their contents. This principle requires an inflexible adherence to it, even if the consequence should be a partial, or even total, failure of the testator's intention. The formalities so carefully provided would be of no value; the statute itself would be virtually repealed, if when the written instrument is supposed not to express the clear intention of the testator, the deficiency may be supplied, and its mistakes corrected by extrinsic evidence. No principle connected with the law of wills is more firmly established or more familiar in its application than this; and it seems to have been acted upon by judges, of early and of later times as well, with a cordiality and steadiness, which shows how entirely it coincided with their own views. A firm adherence to the rule is necessary to avoid the consequences of the misapprehension of the witness, and the danger of offering temptation to perjury."
In In re Fox' Estate, 4 N.J. 587 (1950), the court said as follows:
"The judicial interpretive function is to find the meaning of the testator as expressed in the language used, considered in the light of the attendant circumstances, and effectuate it. In re Fisler's Estate, 133 N.J. Eq. 421 (E. & A. 1943). Extrinsic evidence is not admissible *483 to vary, enlarge, or contradict the terms of a will, for that would set at naught the statutory mandate that testamentary dispositions be in writing and attested by witnesses. But in aid of the testatorial intention, evidence is admissible to place the construing court in the situation of the testator at the time of the execution of the will. For the purpose of determining `the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, or to determine the quantity of interest he has given by his will.'"
Maxwell v. Maxwell, 122 N.J. Eq. 247 (Ch. 1937); Griscom v. Evens, 40 N.J.L. 402 (Sup. Ct. 1878); Nevius v. Martin, 30 N.J.L. 465 (Sup. Ct. 1864); L'Hommedieu v. L'Hommedieu, 98 N.J. Eq. 554 (Ch. 1925).
An omission made by a scrivener in preparing a will cannot be supplied by parol evidence, nor may such evidence be received to contradict or supplement the language used in the will. If at all admissible, it is only for the purpose of showing what he meant by latently ambiguous language actually used.
In Andress v. Weller and Miller, 3 N.J. Eq. 604 (Prerog. 1832), the court said as follows:
"I am strongly inclined to conclude, from the evidence, that there has been an omission on the part of the scrivener who prepared the will, and that these legacies ought to have been charged on the land. But there is no pretense of any fraud or imposition, and the question that arises for consideration is, not as to the effect of the evidence, but its admissibility. If the testimony is admissible, then I should incline to say that the fact was shown, and that the will, as it now appears, could not be taken as the will of the testator, without supplying the omission."
"In the case now before me, the evidence offered is simply parol evidence  consisting of the recollection of the person that drew the will, and the testimony of Stephen Andress; who says that the testator, in a conversation in eighteen hundred and twenty-eight, told him he intended so to fix his business as that the one to whom he left his farm should pay out to the others `as he wished it.' And I find no authority even in cases of wills of personal estate, that will *484 justify me in receiving and acting upon such testimony. But this is a will of lands. The farm is devised to Martin Andress, and it is sought to charge that farm with the payment of fourteen hundred dollars; or, in other words, to diminish the devise by that amount, and purely upon parol evidence. This is altogether inadmissible. It would not only occasion an alarming insecurity in the testamentary disposition of property, but would violate the plainest principles of the law."
See also Zabriskie v. Huyler, 62 N.J. Eq. 697 (Ch. 1901), affirmed 64 N.J. Eq. 794 (E. & A. 1902); Rausch v. Libby, 132 N.J. Eq. 527 (Ch. 1942); Hammel v. Barrett, 79 N.J. Eq. 96 (Ch. 1911), affirmed 79 N.J. Eq. 217 (E. & A. 1911); The Pennsylvania Co., etc., v. Morrell, 108 N.J. Eq. 188 (Ch. 1931); Mayer v. Tucker, 102 N.J. Eq. 524 (E. & A. 1928); Cleveland v. Carson, 37 N.J. Eq. 377 (Ch. 1883).
Since the proffered testimony has been held inadmissible, there remains the construction of the will itself.
The defendant argues that the will was quite patently prepared by one unskilled in the preparation of such instruments, and that the testator intended to leave all of his estate, wherever situate, to his widow, Lucy De Benedictis. In order to accomplish such a result it would be necessary to delete the period after the word "Italy" in paragraph "Second," to insert the word "and" in place thereof, to delete the word "THIRD," and to change the capital "A" in the word "All" in paragraph Third to a small "a." Defendant argues strenuously that the case of Bruce v. Bruce, 90 N.J. Eq. 573 (Ch. 1919), is authority for what she here intends to attempt to prove. In that case the court stated as follows:
"* * * we are of opinion that the enumeration of paragraphs made by a testator on the margin of the paper on which the will is written, to which no reference is made by the testator in the body of his will as a means for the identification of something it contains, is not controlling in ascertaining the intention of the testator, and two such paragraphs may be read as one, to prevent intestacy, unless there is something in the will to the contrary, if the intention of the testator to dispose of his entire estate is otherwise clear."
*485 However, it is to be noted that the deletions and additions required in the will with which we are now concerned were not required there. There as well appeared a beneficiary "to him, his heirs, executors, administrators and assigns" in the disputed paragraph. The court quite patently ascertained the pronoun "him" to have as its antecedent the testator's son "John Bruce," who was the named recipient of the gift in the previous paragraph, and was not supplementing or adding to the will to supply omitted words to dispose of the estate consistent with the testator's undisclosed expressions.
If we are to adopt the defendant's theory the sanctity of a written will would be jeopardized, if not destroyed, and unscrupulously acquisitive persons be led to fraud and perjury to accomplish the nefarious objects of their desires. The court is not free to employ imagination or the process of conjecture to supply that which a testator has omitted to say and which is not reasonably inferable from the language that does appear, to accomplish such a result.
The objection to the proffered testimony is therefore sustained.
In Kinney v. Thomlinson, 2 N.J. Super. 512 (Ch. 1949), the court said at page 515 as follows:
"Generally, intestacy results where the will makes no disposition of some property, or fails to name the donee, or fails in both respects. Here the fatal infirmity is the want of beneficiary and the court is powerless to cure it. In seeking the testamentary intent, we are necessarily confined to the testament itself. The court is not free to employ imagination or the process of conjecture to supply that which the testatrix omitted to say and which is not reasonably inferable from the language that does appear. In Federal Trust Co. v. Ost, 120 N.J. Eq. 43, 183 Atl. 830, affirmed 121 N.J. Eq. 608, 191 Atl. 746, * * * the court said: `* * * It is an unfortunate result that partial intestacy should follow but the court is powerless to change that result. It should not, in the guise of interpretation, rewrite the testator's will. It is, therefore, held that the testator died intestate with respect to twenty-five per cent. of the property remaining after the payment of debts, funeral expenses and general legacies.'"
*486 Since the will fails to name any beneficiary in paragraph Third, the testator died intestate as to the residue of his estate of which he attempted to dispose by said paragraph.
Judgment will be entered accordingly.