VINCENT J. AHLEMEYER, PLAINTIFF, v. JOHN A. MILLER AND MAUD MILLER, DEFENDANTS.

Argued November 1, 1925—Decided November 14, 1925.

1. A child adopted under the provisions of our statute for the adoption of children (*Pamph. L.* 1902, *p.* 259) is clothed with all the rights of a natural child so far as the inheritance of real estate or the distribution of personal property is concerned, but where a conveyance was made to a man and his wife, for their joint lives, and after the death of the survivor "to the child or children" of the grantees, "and in default of such child or children, then to the heirs-at-law" of the grantees, an adopted child of the grantees will not take under the grant over to a child or children, especially when, as in this case, such child was not adopted by his foster parents until after the execution of the deed to them.

2. An estate tail may still be created in this state, notwithstanding the provisions of section 11 of act relating to descents (*Comp. Stat., p.* 1921), but no such estate can be created without the use of the word "heirs," and the words "child" or "children" cannot supply its place. The use of the words "heirs" is also necessary in a conveyance to invoke the rule in Shelley's case.

---

On motion to strike out complaint.

Before Justice MINTURN, by consent.

For the motion, *Kinkead & Klausner.*

Contra, *Autenreith & Gannon.*

The opinion of the court was delivered by

MINTURN, J. The suit is in ejectment, and the motion is to strike out the complaint. Mary Elizabeth Miller and John Miller, her husband, conveyed the premises known as 389-391 Grove street, in Jersey City, by deed dated September 19th, 1891, and thereafter duly recorded, to George Miller, their son, and Beata K. Miller, his wife. After the statement of the usual *habendum,* the deed contained the following limitation, viz.: "To the only proper use, benefit and behoof of the said party of the second part, and the survivor of them during the lifetime of the survivor, and, after the death of the survivor, to the child or children of the parties of the second part, and of the survivor of them, share and share alike, their heirs and assigns forever, and in default of any such child or children then to the heirs-at-law of said parties of the second part, in the following manner: One undivided half part to the heirs-at-law of the said George Miller, their heirs and assigns forever, and one undivided half part to the heirs-at-law of said Beata K. Miller, their heirs and assigns forever."

The life tenants died without children, but on May 24th, 1895, as a result of proceedings duly instituted for the purpose, in the Hudson Orphans Court, John A. Miller, then five years of age, one of the defendants herein, was adjudged under the provisions of our adoption statute to be their adoptive child, and thereafter he resided with his adopted parents as their only child, and thereafter married the other defendant herein. George Miller, the son of the grantor, died about August 7th, 1914, and Beata, his widow, died about November 12th, 1922, leaving her surviving her brother, the plaintiff herein.

The defendants are in possession of the *locus in quo,* claiming title under the statute of adoption, as the child and only heir-at-law of his adoptive parents, as well as under the provisions of the statute of "Descent," and the common law "rule in Shelley's case."

The main contention, however, is centred upon the effect of the provisions of the adoption statute (*Pamph. L.* 1902, *p.*

259; *Pamph. L.* 1912, *p.* 53), declarative of the legal status of the defendant John as the only surviving child of his adoptive parents.

The adoption statute has been before our courts in various factual phases, but never, so far as has been disclosed, has the precise question now at issue been presented in this jurisdiction for determination. The act received a liberal construction by the Court of Errors and Appeals, the present Chief Justice writing the opinion; *In re Book's Will,* 90 *N. J. Eq.* 549, where it was held that the word "child," when used in a will, shall be deemed to include an adopted child. There the learned Chief Justice observed, "the effect of the legislation just adverted to is to clothe the adopted child with all the rights of a natural child so far as inheritance of real estate or the distribution of personal estate is concerned." That case was followed by *In re Alter's Will,* 92 *Id.* 415. Vice Chancellor Foster, dealing with section 20 of the act concerning wills, in so far as it relates to after-born children, said: "Regardless of what the rule may be in other jurisdictions, the law in this state has been settled by the Court of Errors and Appeals by the decision In re Book's Will * * *. It changes the statutory rules regulating the devolution of property by enlarging the class for whose benefit they were originally passed, by making the adopted child a lawful child of the decedent for the purpose of sharing in the distribution of his estate."

Vice Chancellor Howell had previously given this provision of the act a construction in *Stout* v. *Cook,* 77 *N. J. Eq.* 153. Vice-Chancellor Buchanan, in *Haver* v. *Herder,* 96 *Id.* 554, when the question of "legal heirs" as comprehending children was discussed, observed that "this view is in accord with both the spirit of the legislative policy [as indicated in the adoption statute] and the spirit of the judicial pronouncement in the Book case."

Cases are invoked from other jurisdictions in support of this construction, but the adjudication of the Court of Errors and Appeals, so far as the rule of law in this state is concerned, like the *decretæ* of the Roman Curia, is a finality.

*Roma locuta est causa finita est.* But when we are concerned, as in this instance, with the additional inquiry, *i. e.,* whether the Adoption act is sufficiently comprehensive to include a grant of a life estate to the adoptive parents by a deed of conveyance, with a limitation over "to the child or children of the parties of the second part," and "in default of any such child or children then to the heirs-at-law of said parties of the second part," we are manifestly confronted with a legal inquiry entirely *res nova,* in the determination of which decisions of other jurisdictions may be invoked as illuminative of the discussion.

It will be observed that the cases in this jurisdiction, where the effect of the adoption statute was considered, were cases arising under wills, and where, as a rule, the testator occupied the status of the adopting parent, whereas the question now presented arises under a covenant of a deed of conveyance, and concerns the effect of a limitation created by the grantor, a third party, in nowise related by the enabling statute to the adopted child.

The legal construction accorded to a covenant in a deed of conveyance has always differed from the liberality of view accorded by courts of equity to the same terms in a will, the reason being that the sole purpose of testamentary construction is to invoke the intention of the testator, while the language of the grantor employed in a common law deed of conveyance has, by centuries of judicial construction and interpretation, been settled, until in this day the difference has become axiomatic.

Thus, Chief Justice Whelpey, speaking for the Court of Errors and Appeals, in *Adams* v. *Ross,* 30 *N. J. L.* 505, observes concerning the legal effect of the use of the words "child or children" in a deed of conveyance: "In the construction of a deed of conveyance the question is, not what estate did the grantor intend to pass, but what did he pass by apt and proper words. If he has failed to use the proper words, no expression of intent, no amount of recital showing the intention will supply the omission."

The defendant John A. Miller had not been adopted by the grantees for over three years after this conveyance had been

made, and these defendants were then without children, and in the light of that fact the limitation over by a third party to their children or heirs-at-law was legally intelligible, as not comprehending a stranger to the blood in default of lawful issue.

In those jurisdictions where the question has been presented for adjudication, and where similar adopting statutes exist, the result has been adverse to the claim of the defendant. Thus, in *Wilder* v. *Wilder,* 116 *Me.* 389; 102 *Atl. Rep.* 110 (in the case of a trust deed); *Melek* v. *University of Missouri,* 250 *S. W. Rep.* 614 (a will); *Puterbaugh's Est.* (will), 261 *Pa. St.* 235; 104 *Atl. Rep.* 601; *Caspar* v. *Helvie (Ind.)* (test. trust), 146 *N. E. Rep.* 123; *Savells* v. *Brown, Guardian (Ky.)* (deed), 218 *S. W. Rep.* 462; *Parker* v. *Carpenter (N. H.)* (test. trust), 92 *Atl. Rep.* 955; *In re Leask (N. Y.)* (test. trust), 197 *N. Y.* 193; 90 *N. E. Rep.* 652; *Cochran* v. *Cochran (Tex.)* (will), 95 *S. W. Rep.* 731; *Middletown Trust Co.* v. *Gaffey (Conn.)* (test. trust), 112 *Atl. Rep.* 689; and, also, *In re Yates (Pa.)* (will), 126 *Atl. Rep.* 254, the result reached is one of unanimity that a limitation in a deed or will to a child or children is not deemed to include an adopted child, where the grantor or testator is a stranger to the adoption. Probably the reasoning illustrative of the determinations in the cases cited is best presented by the language of the court in the Maine case (*Wilder* v. *Wilder, supra*): "What is the legal effect of the present statute regulating adoption so far as property rights are concerned? In strictness it simply fixes the status of the adopted child in case of intestacy of his adopters, where the rights of inheritance are involved. It is also held to have a bearing upon the intention of the grantor or testator who is himself the adopter. But it is of no particular aid in determining whether an adopted child is within or without the designation of 'child or children,' as used in a deed or will, where the grantor or testator is other than the adopter. The right of inheritance by the adopted child is a matter of statutory creation; the taking under a deed or a will depends upon the intention of the grantor or testator, as

revealed by the instrument itself construed in the light of the surrounding facts and conditions. Where the grantor or testator is the adopting parent it is reasonable to presume that the adopted child was within the intended bounty of such grantor or testator. But where he is a stranger to the adoption such presumption does not prevail. * * * The distinction * * * is clear." / *Wilder* v. *Wilder* (*Me.*), 102 *Atl. Rep.* 110; *L. R. A.* (1918 *B*) 119.

From this analysis it results that the deed of conveyance in question does not legally include the defendant, John A. Miller, as a child of his adoptive parents, the grantees mentioned in the deed, and that the title to the *locus in quo* has not, in virtue of such conveyance, vested in him as an adopted child.

The remaining questions presented involve the application of the statute of descents; the rule in Shelley's case, and the construction of the deed so as to vest a contingent remainder in the defendant, as a child and heir-at-law of the grantees, within the terms of the grant.

It is generally conceded that section 11 of the Descent act (2 *Comp. Stat., p.* 1921, amended *Pamph. L.* 1915, *p.* 64) abolishes estates tail, but in reality it simply defines the legal character of an estate thus transmitted, so that an estate in fee tail may still be created by the use of appropriate language, as at common law, its legal effect being defined by the statute. *James* v. *Dubois,* 16 *N. J. L.* 285.

But in any circumstances no such estate can be created without the use of the word "heirs," and neither the words "children," "issue," "descendants," "seed" or "offspring" can supply its place, while as to conveyances the word is indispensable to create any character of a fee. *Co. Litt.* 20*a*; 2 *Bl. Com.* 115; *Adams* v. *Ross,* 30 *N. J. L.* 505.

It is also elementary that to invoke the rule in Shelley's case, the use of the words "heirs" in the conveyance is indispensable. But, obviously, further pursuit of this phase of the controversy, while interesting in the abstract, can be of no practical utility in the disposition of the case *sub judice,* since the conveyance in question obviously contains no such

limitation, the words "child" or "children" therein contained in the *habendum* being primarily under the settled rules of construction words of purchase, and not words of limitation.

Upon this phase of the subject the Adoption act itself lends controlling emphasis in declaring that "such child shall not be capable of taking property expressly limited to heirs of the body of the adopting parent or parents," thus expressly excluding from its operation titles by descent under the well-settled rules of the common law, applicable to fees tail and titles derivable under the rule in Shelley's case.

The deed in this instance manifestly, therefore, created a life estate in the grantees, with a remainder over, contingent upon the birth of children, and upon failure thereof to the heirs of the grantees, respectively, as at common law. 4 *Kent. Com.* 210; *Butler* v. *Huestis*, 68 *Ill.* 594.

Finally, as was declared by the Missouri Supreme Court in *Hockaday* v. *Lynn*, 200 *Mo.* 466; 9 *Ann. Cas.* 775: "It may be laid down as a general conclusion that while the statute of adoption must be read into the statute of dower, and that of descents, it is with this singularity always to be observed, viz., that the adopted child is so let in only for the purpose of preserving in full its right of inheritance from its adoptive parent, and the door to inheritance is shut, and its bolt shot, at that precise point." To the same effect are *Wilder* v. *Wilder, supra,* and *In re Leask,* 197 *N. Y.* 193.

The result reached, therefore, is that the motion of the defendants to strike out the complaint is denied, and since the motion is tantamount in legal effect to the interposition of a demurrer at common law, judgment will be ordered to be entered upon the pleadings in favor of the plaintiff and against the defendants.