Testator, Jefferson Smallwood, died February 9th, 1934, testate. His will, which this court is asked to construe, bears date September 26th, 1929, at which time all of the beneficiaries named therein were living.
The second clause of the will, from which this controversy arises, is: *Page 127 
"It is my will and I order and direct that my executors hereafter named shall sell all my property real and personal at public or private sale at their discretion and after paying my debts and funeral expenses, I give, bequeath and devise the balance of my estate to my children and grandchildren as follows: one-third of said balance to my son, David M. Smallwood; one-third of said balance to my son, Clarence Smallwood; one-sixth of said balance to my grandson, Leroy Smallwood; and one-sixth of said balance to my granddaughter, Ida Silver Smallwood."
The son, David M. Smallwood, to whom the testator devised and bequeathed one-third of the "balance" aforesaid, predeceased testator, he having died on July 15th, 1932, intestate.
At the time of the making of the will of Jefferson Smallwood, his son David and David's wife, Harriet, had legally adopted a boy, Harry D. Smallwood, the date of the adoption being March 27th, 1914, of which adoption the testator was fully aware. This adopted child survived both decedents.
The question for decision is whether this adopted son is entitled to the bequest to his deceased adoptive parent as set forth in the above quoted paragraph of the will of Jefferson Smallwood.
It will be observed that the gift to the father of the adopted son is absolute, with no provision in the will that it shall go to others in the event of the death of David Smallwood. It thus clearly appears that in so far as testator's intention is concerned, he was giving no thought to any one other than his son David, and in this the case differs from those in which the court has resort to the language of the will in order to discover testator's intent therefrom. Herein the question for determination depends on an interpretation of the pertinent statutes and not an ascertainment of testator's intent, as gathered from the will or surrounding circumstances.
These statutes are section 22 of the act concerning wills, 4Comp. Stat. 1910 p. 5866 § 22, and section 4 of the Adoption act, P.L. 1902 ch. 92 p. 262, as amended by P.L. 1912 ch. 28p. 53.
Section 22 of the Wills act reads:
"That whenever any estate of any kind shall or may be devised or bequeathed by the testament and last will of any testator or testatrix, to any person being a child or other descendant of such testator or *Page 128 
testatrix, * * * and such devisee or legatee shall, during the life of such testator or testatrix, die testate or intestate, leaving a child or children, or one or more descendants of a child or children who shall survive such testator or testatrix, in that case such devise or legacy to such person so situated as above mentioned, and dying in the lifetime of the testator or testatrix shall not lapse, but the estate so devised or bequeathed shall vest in such child or children, descendant or descendants of such legatee or devisee, in the same manner as if such legatee or devisee had survived the testator or testatrix and had died intestate; but this provision shall not apply where the testator or testatrix shall, by the will or codicil thereto, or other instrument, have otherwise directed in regard to the children or descendants of the said devisee or legatee dying as aforesaid."
We have before us, then, a bequest by a father to his son, who died intestate during the lifetime of the testator, and this deceased legatee left no child or children other than an adopted son. The statute says that such a devise or bequest shall not lapse in case there be a living child or children of the deceased legatee or devisee, but that the estate so devised or bequeathed shall vest in such child or children. Is an adopted child such a child as is spoken of in the statute in whom the estate so devised or bequeathed shall vest? Section 4 of the Adoption act, so far as it is pertinent, after reciting proceedings for adoption and the entry of the decree for adoption, reads as follows:
"And the child shall be invested with every legal right, privilege, obligation and relation in respect to education, maintenance and the rights of inheritance to real estate, or to the distribution of personal estate on the death of such adopting parent or parents as if born to them in lawful wedlock."
The adopted child in the instant case does not come within the expressed proviso of section 4, so that if a proper interpretation of the statute law brings the adopted child within the provisions thereof, the legacy or devise of the testator, Jefferson Smallwood, did not lapse by reason of the death of the adoptive parent before that of Jefferson Smallwood, but such adopted child is entitled to take the devise or bequest of his deceased adoptive parent.
Chief-Justice Gummere, in In re Book's Will, 90 N.J. Eq. 549,
for the court of errors and appeals, in deciding the question *Page 129 
as to whether or not "child," "children," or "issue" referred to in section 20 of the Wills act contemplated adopted children as well as those born in wedlock, said (at pp. 552, 553):
"The effect of the legislation just adverted to is to clothe the adopted child with all the rights of a natural child so far as inheritance of real estate or the distribution of personal estate is concerned. It makes such child the lawful child of the adopting parent in these respects. It changes the statutory rules regulating the devolution of property, not by amending, or repealing pro tanto, the provisions of pertinent legislative enactments, but by enlarging the class for whose benefit they were originally passed (that is, the children born to the decedent, and their issue), by making the adopted child a lawful child of the decedent for the purpose of sharing in the distribution of his estate.
"The act concerning wills, the statute of descents, and the statute of distribution composed the entire legislative system regulating the transmission of the estates of decedents, testate or intestate, prior to the passage of the act for the adoption of minor children. By the enactment of this latter statute that system, as we have just said, was, to some extent, changed. To determine the purpose of the legislature in making that change, and the extent thereof, all of these statutes must be read together. * * * Applying this rule, we are of opinion that the legislative intent to be gathered from a reading of all these statutes was to vest in adopted children all the rights and privileges which by the act concerning wills, the statute of descents, and the statute of distributions had been conferred upon children born in wedlock; that is to say, to place them in the same position as if they had been natural born children of the decedent, so far as those statutes are concerned — to substitute the lawful children of the decedent, no matter what the source of their origin, in the place of those born of his body. To give this legislative purpose its full significance, the meaning of the words `child,' `children,' and `issue,' wherever appearing in the various statutes comprising the legislative system embodied therein, when used with relation to the testator or intestate, must be *Page 130 
considered to have been enlarged so as to include adopted as well as natural born children within their scope."
This language is equally as appropriate to section 22 of the Wills act, as to section 20, and when the legislature used the words "child or children" in section 22 it meant, in view of the Adoption act, adopted children.
The result is that David died leaving a child, his adopted son Harry, and this adopted son takes his father's devise or bequest under the will of Jefferson Smallwood. See, also, Clark v.Clark, 76 N.H. 551; 85 Atl. Rep. 758, and Warren, Adm'r, v.Prescott, 84 Me. 483; 24 Atl. Rep. 948.
This would seem to dispose of the question before the court. Defendant relies on Stout v. Cook, 77 N.J. Eq. 153; affirmed,79 N.J. Eq. 640, which was a case involving testator's intention when he used the words "surviving children" in his will. The court found that testator did not have in mind adopted children, "for the reason that there was no law of this state under which such adoption could be had." The decision was based on the intention of the testator and not that of the legislature. The legislature, in the instant case, created the Adoption act and fixed the status of the adopted child. The testator did not. All testator did was to create an absolute estate in his son, who predeceased him, and the legislature said that that estate should not be considered as lapsed on the death of testator's son prior to that of the testator, but that the estate of the deceased foster parent should go to his child, and it further said that an adopted child was, by the Adoption act, "invested" with "the rights of inheritance to real estate, or to the distribution of personal estate on the death of such adopting parent or parents as if born to them in lawful wedlock."
Defendant also relies on Haver v. Herder, 96 N.J. Eq. 554,
which was also decided on the question of testamentary intent and is not, therefore, pertinent herein, but in that case Vice-Chancellor Buchanan, in deciding the issue before him, called attention to the difference between a case involving a statutory interpretation and that involving a testamentary interpretation, particularly referring to the case of In reBook's Will, supra, and as to that case he said (at p. 557): *Page 131 
"That case was one of statutory not testamentary, interpretation, involving a distinctly different issue."
Defendant also relies on Dulfon v. Keasbey, 111 N.J. Eq. 223.
In that case the question decided by Vice-Chancellor Backes was whether an adopted child took under the will before him, and he called attention to the fact that the medium of inheritance he had under consideration was that under the will and not under the statutes, and pointed out (at p. 227): "The medium of the inheritance may be a will. Where the testamentary intention is indefinite or obscure, an adopted child may take under it if his status answers the description of the will. The statutory system supplies the intention; he takes by designation of the system."
He then cites the rule formulated by Vice-Chancellor Buchanan in Haver v. Herder, supra, wherein that vice-chancellor said: "Where a testator, by a will executed and probated during the existence of our statute as to adoption, devises property to a class designed as `heirs,' `lawful heirs,' or `legal heirs' (in cases where, prior to the statute of adoption, such words would have been held to mean `children' or `children and/or the children of deceased children') he must be deemed, in the absence of evidence to the contrary elsewhere in the will or surrounding circumstances, to have intended to include within such class children adopted pursuant to such statute, as well as natural born children or grandchildren."
In the Dulfon v. Keasbey Case, supra, Vice-Chancellor Backes pointed out that, "here there is no room for the legislative scheme; the testator had his own, and it is unmistakable." In the instant case there is no room for testamentary interpretation. The inheritance of the adopted son is under the legislative scheme that the legacy should not lapse and should go to the deceased parent's adopted child.
The decree will be that the defendant Harry D. Smallwood is entitled to the bequest or devise of the testator, Jefferson Smallwood, to his deceased son, David M. Smallwood. *Page 132