Complainant, as executor and trustee under the will of Mary E. Hall, deceased, files bill for interpretation of the will and a subsequent trust instrument, and for instructions.
By the will, made in 1920 and confirmed (except as to a minor bequest) in 1923, the testatrix made some bequests not here material, and gave the residue of her estate to her executor and trustee, Ironbound Trust Co. (subsequently merged with complainant) in trust, as follows: *Page 421 
 "Tenth: * * *
"2. To pay the net income arising therefrom in equal shares in semi-annual instalments to my three children, William J. Hall, Emma M. Rost and Lewis Earle Hall, for and during the period of five years after my decease.
"3. Upon the expiration of the aforementioned period to divide and distribute the principal of my said trust estate in manner following;
"To each of my grandchildren who shall be living at such time the sum of One Thousand Dollars. In the event that my son, Lewis Earle Hall, shall be living at such time and shall have no children, then to him the sum of One Thousand Dollars. The balance, after the payment of the aforesaid sums, to divide into three equal shares or parts, to pay one of each said shares or parts to each of my three said children, William J. Hall, Emma M. Rost and Lewis Earle Hall, respectively.
"4. In the event that any of my said children shall predecease me, or die before the termination of the five year period above provided for, leaving issue, then his or her interest herein shall pass to such issue as shall be living at such respective times; should any of my said children so die leaving no issue, then his or her share shall be added to and become part of the share or shares of said survivor or survivors."
In 1924 she conveyed to the same trustee, by deed of trust, the major portion of her property, real and personal, in trust to pay the income to herself for life and thereafter, —
"Second: Upon the death of the party of the first part to grant, release and convey the said real estate forming a part of said trust and hereby granted or such portion thereof as may remain unsold and any real estate in which the funds of said trust fund may have been invested unto such person or persons, or bodies corporate or politic in such shares and proportions as the said party of the first part may designate, limit or appoint in and by her last will and testament duly executed in due form of law and in default of any such designation, limitation or appointment, then unto such person or persons as shall then be the heirs at law of the party of the first part under the laws of the State of New Jersey in such shares and proportions as they would be entitled to by the laws of the State of New Jersey if the said donor had died intestate and seized and possessed thereof in fee simple, to have and to hold unto them, their heirs, administrators and assigns, absolutely and forever.
"Third: Upon the death of the party of the first part, to transfer, assign, release and set over the said securities, investments, properties and assets forming the personal property of the said trust fund unto such person or persons or bodies corporate or politic, in such shares or proportions as the said party of the first part may designate by her last will and testament, duly executed in due form of law, and in default of any such designation, limitation or appointment unto such person or persons as should then be the next of kin of the said *Page 422 
party of the first part under the laws of the State of New Jersey in such shares and proportions as they would be entitled to by the laws of the State of New Jersey if the said party of the first part had died intestate and possessed thereof."
Testatrix died in 1937, leaving a gross estate of about $8,500 outside of this trust fund, which latter amounted to some $62,000. She was survived by three children, William J. Hall, Emma M. Rost and Lewis Earle Hall, who are her next of kin, and three granddaughters, Marie H. Lambert, daughter of William J. Hall, and Lorraine M. Tice and Dolores M. Johnson, children of Emma M. Rost. There also survived Joanna Hall, adopted daughter of Lewis Earle Hall, who was adopted by Lewis Earle Hall as his daughter, on November 24th, 1926, under the laws of New Jersey.
Prior to the filing of the bill, there had been served on complainant by defendant Rosenstein, as sequestrator, a levy under writ of sequestration in a suit brought against defendant William J. Hall by the latter's wife.
The most important question presented for determination is whether the assets in the trust fund are to be distributed (1) in accordance with the provisions of the will, or (2) to the next of kin under the provisions of the deed of trust.
The deed of trust is of course valid and effective. It was an irrevocable conveyance, disposing of the subject-matter inpraesenti, — not an instrument testamentary in character, to take effect only at, and not until, the donor's death. NationalNewark and Essex Banking Co. v. Rosahl, 97 N.J. Eq. 74;128 Atl. Rep. 586. The property then conveyed by that deed of trust was then and thereby definitely and finally removed from her ownership. It thereafter formed no part of her assets or estate, and hence would not be affected or operated upon by any last will and testament she might leave, — considering a last will and testament strictly as such. Farnum v. Pennsylvania Co., c.,87 N.J. Eq. 108; 99 Atl. Rep. 145, approved, Mayer v. Tucker,*102 N.J. Eq. 524, at 529, 141 Atl. Rep. 799. The trust fund is therefore to be distributed by virtue of, and in accordance with, the terms of the trust deed.
By the provisions of the deed of trust the estate in remainder *Page 423 
in the trust fund, after the death of the donor, is given upon an alternative contingency to two different sets of persons. If the donor leaves a valid last will designating the persons to whom the property in the trust fund is to be conveyed by the trustee, the trustee is to convey it to them accordingly; but in default of such designation by will, the property in the trust fund is to go to those who would be intestate successors of the donor.
The donor did leave a valid will, (which was duly probated). A sharply controverted question arises however, as to whether or not this will comes within the scope or category specified in that behalf by the provisions of the trust deed. It is contended, first, that under the language of the trust deed, according to its true intent and meaning, it is requisite that a will, to be operative and effective as a disposition of the trust remainder, must have been executed subsequent to the execution of the trust deed, whereas the will and codicil sub judice were both executed prior to the deed.
The argument in this behalf is as follows: That the provisions of the trust deed are that the trustee shall convey the real estate to such persons and in such shares as the donor "may designate, limit or appoint" in and by her will, c.; that the natural and ordinary meaning of the word "may" connotes a future act; that the quoted phrase is therefore to be interpreted as though it read "may hereafter designate, limit or appoint;" and that the will in question, having been executed theretofore instead of thereafter, is inoperative as a valid designation.
It is true that the language of the deed is susceptible of that interpretation; but it seems clear that such is not the natural or probable meaning of that language, considered with the context and with the surrounding circumstances. If the words had been "may designate, c., in writing," — without specifying a will, — the argument would be stronger; but the language is "may designate, c., by her last will and testament duly executed in due form of law." Now while a will duly executed is in one sense the last will and testament of the testator notwithstanding he is still alive, — and is doubtless frequently, and properly, referred to as such, — nevertheless *Page 424 
such an instrument does not actually become and be his last will and testament unless and until the maker thereof has died and the instrument has been probated. Then and then only does it have any force, operation or effect as his last will and testament.
Consequently the natural meaning to be accorded to a provision referring to a "designation by A's last will and testament" would be that which could be duly paraphrased "designation by an instrument in writing which shall have been duly probated as A's last will and testament." This is further corroborated by the additional words in the present deed, — "duly executed in due form of law." The designation is not to be validly made if it be made in an instrument which the donor intended to be his last will and believed to be validly executed as such, but which in fact was not validly executed.
The obvious intent and meaning of the phrase in question, when the whole language is considered, is that the designation is to be made by an instrument which shall have become established and operative as the donor's last will, and is contemplated as being, or to be, so made by such instrument at the time such instrument shall have become operative as such valid will, namely, at the death of the donor leaving such instrument which thereafter is duly probated. In short, the connotation of futurity attached to the use of the word "may" refers to the time of the donor's death leaving such a valid will, and not to the time of the execution of such will.
Further basis for the conclusion that by this language in the trust deed, according to its true interpretation, the donor meant a designation in and by such valid will as donor should leave at her death irrespective of whether such will had been executed prior or subsequent to the deed of trust, is to be found in a consideration of the attendant circumstances. Not only would it naturally be presumed that at the time of the execution of the trust deed she had in her memory and mind the existence and provisions of her will executed only four years prior, and confirmed by codicil only one year prior, to the execution of the deed, but there is also direct testimony that this was true. *Page 425 
By the provisions of that will and codicil she gave all of herassets, except some jewelry and personal effects specially bequeathed and money bequests of $500 and $200 to a cemetery and church, to the Ironbound Trust Co. as a trust fund, from which the income was to be paid to her children for five years and then to distribute the principal among her children and grandchildren. By the trust deed she likewise gave practically all of her assets, except such jewelry and personal effects and some bank deposits of no considerable amount, to the same trustee, the income to be paid to herself for life and at her death the principal to go as has hereinbefore been set forth.
It is evident from all this that her sole purpose and intent in making the deed of trust was to put her "estate," — her real estate and securities: all of her property except personal effects and a small amount of ready cash, — into the hands of the trust company in order to accomplish a better management, investment and productive income for herself during her life, than that of which she herself would be capable, and provide against losses by unwise investments which she herself might be inclined or induced to make; but with no then present intent to make any different disposition of her estate after her death than that which she had already made in and by her will, while at the same time leaving it open and possible for her to make a different disposition of her estate after her death by modifying her will, or executing a new one or destroying her will and intentionally dying intestate. If her intent (at the time of executing the trust deed) as to the disposition of her property after her death, had altered from that expressed in the will, or if she had intended, in and by what she said in the trust deed, that the disposition of her estate after her death was to be effectuated only by a will to be thereafter executed (and to exclude her then existing will from force and operation in that behalf), she would have executed such a new will at, or immediately after the execution of the deed of trust.
It seems clear, therefore, that the donor, in and by the clause of the trust deed now under consideration, according to its true interpretation, meant a designation in and by such *Page 426 
valid will as she might leave at her death, whether that will was the one already in existence or some other will subsequently made.
This is the conclusion reached without any reference to, or consideration of, the testimony of the draftsman of the trust deed as to the express statements to that effect made to him by the donor by way of instructions to him for the drafting of the deed of trust. That testimony, though not objected to inlimine, was the subject of a subsequent motion to strike; and it is concluded that it is inadmissible and the motion to strike should be granted. (Order to that effect may be entered, if desired.) Of course if that testimony be admissible and be considered, it simply makes still more certain the correctness of the conclusion reached de hors that testimony.
It is contended, secondly, that the will in question, — (the duly probated will of the donor), — is not, and cannot be, operative as a valid designation of the recipients of the equitable remainder, — a valid exercise of the power of appointment in that behalf reserved to the donor in and by the deed of trust; because (a) it does not by its terms purport to designate or appoint the persons to whom, or shares in which, the remainder interest in the trust fund shall go, and (b) it was not intended as an exercise of such reserved power of designation or appointment, and could not possibly have been so intended because neither the trust fund nor the reserved power of appointment had been created or was in existence at the time the will was executed.
It is true that neither the trust fund nor the power of appointment had been created at the time the will was executed; and necessarily therefore the decedent did not intend by that will, at the time she executed it, to exercise the power of appointment or to designate the persons who should take the remainder interests in the non-existent trust fund. But it is also true that a will speaks as of the death of the testator, and it is also perfectly evident that, — for the reasons already hereinbefore set forth, — the decedent, at the time of the execution of the trust deed, adopted, and thereafter continued to have, the intent that the provisions of that will constituted *Page 427 
a designation of the persons to whom the remainder interest in the trust fund should go at her death.
Perhaps a sounder and more accurate view or statement would be to say that by what she said in the trust deed she intended to, and did, incorporate the provisions of her then existing will with reference to her residuary estate, (subject to its continuing to be her valid last will and testament) into the deed of trust as the direction or designation of the persons to take the remainder interests in the trust fund. The property which she was then putting into the trust fund was the same property which (mutatis mutandis) comprised that which was referred to in her existing will as her residuary estate.
That which she was intending, and doing, in and by the trust deed, in and by the provisions now under consideration, was to specify or designate, contingently, the persons who should be the takers of the remainder interest. That which she thereby provided, by and according to the true intent and meaning of what she said, was, — as has already herein been determined, — that the trustee should convey the remainder to those persons who should be designated in that behalf in and by the provisions of such valid last will and testament as she should leave at her death, whether that last will and testament were the one she had already executed or some other. It necessarily follows, however, from the fact that she intended the provisions of her then existent will to be operative in that behalf if that will should be in fact left by her as her last will and testament (and should be duly established as valid by probate), that she then and thereby adopted and intended, (as a part of her trust deed), the intent and meaning that the already existing provisions of that already executed will constituted a direction and designation of the persons (and shares) to whom the remainder interests should go.
In other words the trust deed would be correctly paraphrased as follows: "I give this property to Trust Co. in trust * * * to convey the same at my death to such persons and in such shares as may be designated in that behalf in such valid will as I may leave, and if the valid will which I leave shall be that which I have already heretofore executed, then *Page 428 
and in that case the persons (and amounts) therein designated as beneficiaries of my residuary estate are to be deemed and taken to be the persons (and amounts) who take the remainder interest under this trust deed."
The question is one of interpretation of the trust deed, — not of interpretation of the will. It is as though the donor had said in the trust deed, "The remainder is to go to the persons named in my existing will as beneficiaries of my residuary estate, if that will is eventually probated as my last will and testament; if not, it is to go to such persons as may be designated in such other valid will as I may leave; if I leave no valid will or make no such other designation, then it is to go to my intestate successors."
The fact that the existent will does not purport to direct the disposition of the trust fund, specifically as such is therefore of no materiality; although such defect in any subsequently executed will, might well be material and perhaps fatal.
It is concluded therefore that the persons entitled to the trust fund are those specified in the will as takers of the residuary estate, — and in the same shares and amounts.
The next issue for determination in this cause is as to whether or not Joanna Hall, the adopted daughter of decedent's son Lewis, is entitled to take the sum of $1,000 of this trust fund at the end of the five-year period (if she then survives) as a "grandchild" of decedent, under the provisions of paragraph 3 of the Tenth item of the will (hereinbefore quoted at length).
The gift here, as has been heretofore shown, is actually made by virtue and operation of the trust deed, but expressed through the medium of the language of the will. In so far as this particular gift is concerned (and the other particular gifts), there is nothing whatever to vary the construction or interpretation from that which would be ascertained if we were considering the language of the will operating as a will.
The will (and as a matter of fact the trust deed also) was executed prior to the adoption, and by a stranger to the adoption. *Page 429 
Under these circumstances, an adopted child of a child of the testator (or grantor) does not take under a gift to "grandchildren" of the testator (or grantor), — unless there be other evidence in the instrument or the surrounding circumstances sufficient to show an intent by the testator that he should take.Ahlemeyer v. Miller, 102 N.J. Law 54, 131 Atl. Rep. 54,affirmed, *103 N.J. Law 617, 137 Atl. Rep. 543; Dulfon v.Keasbey, 111 N.J. Eq. 223, 162 Atl. Rep. 102; and Cf. Haver
v. Herder, 96 N.J. Eq. 554, at 558, 126 Atl. Rep. 661.
The same thing is true where the gift is to the "issue" of the child of testator or grantor. In the Dulfon case, the gift was to "issue;" in the Ahlemeyer case, the gift was to "children."
Joanna Hall therefore takes nothing, either under the third paragraph nor under the fourth paragraph of the Tenth item of the will (incorporated into the trust deed).
Counsel for Joanna Hall relies on the case of Smallwood v.Smallwood, 121 N.J. Eq. 126, 186 Atl. Rep. 775. The issue in that case however is quite different from the one in the instant case. In that case there was no question as to the interpretation of the intent of a testator or donor as expressed in the language of a written instrument executed by a testator or donor, — no question as to whether or not donor or testator intended that an adopted child (of someone other than himself) should be included in a class designated as "children;" the question was as to the interpretation and effect of section 4 of the Adoption act, and its effect on the operation of section 22 of the Wills act.
The Smallwood case holds that by virtue of the statutory
provisions an adopted child is the child of its father and takesby the statute, on the death of its father, a devise or bequest to the latter which would otherwise lapse. In the instant case the question is as to the intent of the grantor in the deed of trust (or the will as therein incorporated); and the Dulfon andAhlemeyer cases are controlling.
Next as to the question raised concerning inheritance taxes. The transfer of remainder interest after the donor's life is *Page 430 
obviously taxable as a transfer intended to take effect in possession or enjoyment at or after the transferor's death; and moreover it is a transfer obviously in lieu of testamentary transfer and hence in contemplation of death. In re Schweinler,117 N.J. Eq. 67, 175 Atl. Rep. 71. The executor is liable under the statute for the payment of the tax. The will does not direct that such tax, on the trust estate (nor on any other transfer), be paid out of the residuary estate. The tax, under the New Jersey statute, is payable ultimately by the donees. If complainant as executor has paid or shall pay this tax, it therefore is or will be entitled to reimbursement from the trust estate. If complainant as trustee has paid it, or shall pay it, it is entitled to deduct such tax from the shares passing to the ultimate donees. The same thing is true as to federal estate tax (if any be leviable in this instance). The trust estate is not a part of the decedent's estate passing under the will, and hence that tax is not payable out of the estate passing under the will (as between that estate and the trust fund).
The final question presented is as to the rights, if any, which have been acquired by the sequestrator of the assets of William J. Hall, in the assets in the hands of complainant either as executor or trustee.
The levy under the writ of sequestration was addressed to, and served upon, complainant as Executor of the Estate of Mary E.Hall, deceased, — eo nomine. The levy and inventory thereunder was made on "all the right, title and interest of * * * William J. Hall, in and to the estate * * * of Mary E. Hall, * * * and the right, title and interest of the said defendant (William J. Hall) in and to the distributive share of the said estate left to the said defendant (William J. Hall) by his said mother under her last will and testament, including all moneys which the said defendant is now entitled to receive from the said estate from you as the Executor under the last will and testament of the said Mary E. Hall."
This levy was made April 20th, 1937, shortly after the will of Mary E. Hall was probated. There is no reason to doubt that it operated effectively on such portion of the estate left *Page 431 
by the decedent as was given to William J. Hall under the provisions of the will and which actually passed or passes to himunder the will. As has hereinbefore been pointed out, however, none of the trust fund which was conveyed inter vivos to the trustee by the testator passed or passes under or by virtue of the operation of the will as a will. The levy, by its terms, purports to have been made only on the executor, — not on the trustee; and only on the right, title and interest of William J. Hall passing to him under the will, — not on any interest passing to him under the trust deed. It is concluded therefore that this levy has not been effectual to operate on any interest of William J. Hall in the trust estate.
There are cases in which the narrow language of a levy or return of such a writ has been amplified on a showing of an actual broader intent and act than is shown by the strict terms of the levy; but no effort has been made in that behalf in the instant case.
There would seem to be no reason why an application for a further writ should not have been made or should not now be made so as to reach the William J. Hall interest in the trust fund, — if the indebtedness due by him has not been heretofore satisfied. Probably such application should be on notice; and it would seem that under proper practice, it should be made in the divorce suit and in the vicinage of that suit. *Page 432