The complainant seeks instructions as to who is, or are, entitled to a trust fund held by it under an indenture of trust dated October 3d 1924, made by John F.W. Noe, who died on or about October 7th, 1943.
Under the indenture, Noe, the settlor, reserved to himself the income of the trust for the period of his life. The pertinent part of the indenture reads as follows:
"* * * and upon the death of the Settlor, his wife, Lillian L. Noe surviving him, then to pay over, assign and transfer to her the corporate stocks, securities, and other personal property then constituting said trust fund, including any accumulated income then in hand. In case the said Lillian L. Noe does not survive the Settlor, then upon his death to pay over, assign, transfer and set over the money, corporate stock, securities, and other personal property constituting *Page 39 
said trust fund, including any accumulated income then in hand, to the next of kin of the Settlor according to the laws of the State of New Jersey in force at this date providing for the distribution of the personal estate of persons dying intestate."
The settlor's wife, Lillian L. Noe, died before him, on or about December 18th, 1940, without having borne any children of their marriage.
Noe was the only child of his parents, who predeceased him. He was survived by two adopted children, namely, George Adelung, adopted as an adult on December 31st, 1940, when he was of the age of approximately thirty years, and George's daughter, Barbara Louise Adelung, adopted on February 7th, 1942, when she was of the age of four and a half years. George is the son of the settlor's wife, Lillian, by a prior marriage, and Barbara Louise is her granddaughter.
The adopted children claim the corpus of the trust estate as "next of kin;" as also does the Commercial Trust Company of New Jersey, executor of the estate of Mary Jenkins, deceased, which alleges its decedent was a sister of settlor's mother and the nearest next of kin living at the time of the creation of the trust. A claim to the fund is made also by John F.W. Mangels, James Mangels and Gertrude Mangels Johnson, the children of Henry L. Mangels, deceased, a brother of settlor's mother.
It is contended by the Jenkins estate and the Mangels that it was the intention of the settlor to vest the corpus of the trust in the nearest next of kin living at the time of the execution of the trust indenture and that they then occupied that status.
The law firm of Quinn, Parsons Doremus claim to have a $2,500 interest in the trust corpus by reason of an alleged assignment from the settlor and his wife dated April 26th, 1928.
The complainant trustee alleges that the settlor's language expressed in the indenture is ambiguous and uncertain, and asks the court to clarify the situation and ascertain the settlor's intention.
Where the provisions of a trust indenture are not clear, to gather the intention resort should be had to the language *Page 40 
used in the light of the surrounding circumstances existing at the time of the creation of the trust. DeBrabant v. CommercialTrust Co., 113 N.J. Eq. 215; 166 Atl. Rep. 533.
Who did the settlor have in mind when he used the phrase "next of kin?" It may be stated at the outset that "next of kin" cannot be determined until the death of the settlor or testator. The law is well defined in this respect. Chancellor Walker so decided inSmith v. Robinson, 83 N.J. Eq. 384; 90 Atl. Rep. 1063, when he said among other things:
"Morton P. Robinson, the life tenant, is still living, and it cannot be said who will be his heirs-at-law or next of kin at the time of his death. He has children who, if they survive him, will be both his heirs-at-law and next of kin, but he may survive them, and, therefore, neither his heirs-at-law nor next of kincan be ascertained until his decease." (Italics mine.)
Tiffany's Work on Real Property (two vols. in one — 1912)282 § 120, refers to vested contingent remaindermen as follows:
"Ascertainment of remaindermen.
"That a remainder cannot be vested unless there be some certain person or persons in being in whom it can be regarded as vested, is a proposition as to which, upon principle, it would seem that there could be little doubt, and that such is the law is recognized by the most authoritative writers, and by numerous decisions. In a few cases, however, in this country, the courts have failed to recognize this certainty of the remainderman as an essential characteristic of a vested remainder, the error arising from oversight, apparently, and not from any purpose of departing from the established line of distinction on the subject.
"A very common instance of a remainder contingent because of uncertainty in the remaindermen is presented by the limitation of a remainder to the heirs, or to the heirs of the body, of a living person named, in which case the heirs cannot be ascertained till such person's death, on the principle that there can be no heir to a living person, as expressed in the maxim,Nemo est haeres viventis."
In the instant case the estate in the settlor's "next of kin" during his lifetime was unquestionably contingent for two reasons: (1) the identity of the taker or takers was not established; and (2) the event upon which they were to take, viz., Lillian's predeceasing John, was uncertain. Teets v. *Page 41 Weise, 47 N.J. Law 154; Kahn v. Rockhill, 132 N.J. Eq. 188;28 Atl. Rep. 2d 34; affirmed, 133 N.J. Eq. 300; 31 Atl. Rep.
2d 819. In Clapp on Wills and Administration in NewJersey, § 179 and note, appears the following:
"A gift is contingent as to the person where the taker is not born or not ascertained. Persons are unascertained when no one can point out which among living persons, will be surely the sole taker or takers of the gift."
Note (4) — "This may be illuminated by a comparison of a gift to A for life and over to those of his children surviving him; and a gift to A for life and over to his child B if he survives A. In the former case the class of persons who will take cannot be ascertained until A's death, the gift being contingent both as to the persons who take and as to the event of their survivorship; in the latter case the person is definitely ascertained and the gift is contingent solely on an event."
Noe, the settlor, left no doubt of the sense in which he used the words "next of kin." They are to be determined "according tothe laws of the State of New Jersey in force at this date,"
(October 3d 1924), "providing for the distribution of thepersonal estate of persons dying intestate." (Italics mine.)
See Duffy v. Hargan, 62 N.J. Eq. 588; 50 Atl. Rep. 678;affirmed, 63 N.J. Eq. 802; 52 Atl. Rep. 1131; Apgar v. Hoffman,113 N.J. Eq. 233; 166 Atl. Rep. 159; affirmed, 115 N.J. Eq. 171;169 Atl. Rep. 690.
In the Apgar v. Hoffman case the question presented was whether the testator used the term "next of kin" to mean her nearest blood relatives, or those who would be her distributees under the statute of distribution. Vice-Ordinary Buchanan held that the words meant those who would be her distributees under the statute of distribution. See Carter v. Martin, 124 N.J. Eq. 106; 199 Atl. Rep. 589; Trenton Trust Co. v. Gane, 125 N.J. Eq. 389; 6 Atl. Rep. 2d 112; affirmed, 126 N.J. Eq. 273;8 Atl. Rep. 2d 708; Francisco v. Citizens Trust Co.,132 N.J. Eq. 597; 29 Atl. Rep. 2d 320; affirmed, 133 N.J. Eq. 28; 29 Atl. Rep. 2d 884.
I was tempted, at first, to take the view presented by counsel for the Jenkins estate, and counsel for the Mangels. They *Page 42 
contended that it was the settlor's intention to create a vested estate in them, or some of them, claiming they were "next of kin" as of October 3d 1924. But further reflection of all the circumstances surrounding the settlor's life, his intent and purpose in the execution of the trust indenture, brought me to the conclusion that their contention is without force. John, the settlor, entered into the agreement of trust when he was of the age of forty-seven years, when he had been married for approximately one year to Lillian who at the time was thirty-two years of age. It does not seem unreasonable to assume that John expected a child or children to result from his marriage. Lillian had one child. George, aged nine years, at the time of her marriage to John, through a previous union, as above mentioned. It may have entered John's mind to adopt George at some time. Apropos thereof, the Court of Errors and Appeals in TrentonTrust Co. v. Gane, supra, said:
"On the proposition that the testator could well have anticipated the possibility of an adoption and the legal consequences that would likely follow thereon we give probative value to the fact that chapter 83, page 123, P.L. 1877, providing for the adoption of children and directing that adopted children should be invested with every legal right and privilege in the inheritance of real estate and in the distribution of personal property on the death of the adopting parent as if born in lawful wedlock, was enacted more than four years before the making of the codicil and twenty-three years before the death of the testator. The words `surviving lawful heirs,' as used by the testator, were, in our view, and as was held below, equivalent to the expression, `those entitled to take by intestate successionunder the statute of distribution.'" (Italics mine.)
Again, the settlor considered the possibility that his wife might predecease him, and it may be, under which circumstances, he might have decided to remarry. He provided for his wife in the event she survived him. It would not be doing violence to reason in taking the liberty of assuming that Noe would prefer his wife over his aunt and cousins aforesaid. If it were his intention to benefit his aunt and *Page 43 
cousins, regardless of future developments, it would have been a simple matter to make them, or some of them, the beneficiaries if his wife predeceased him. He was being advised by an outstanding and respected member of the legal profession, and he chose the method of limiting the distribution of the corpus of his estate after his death according to the provisions of the statute of distributions in force on the date of the indenture, as above stated.
Under this limitation, if Lillian predeceased John leaving children of the marriage, who survived John, and John did not remarry, the children would take all. If John remarried and died leaving a widow and children, they would share proportionately. If John did not remarry, and left no children of his body, or by adoption, surviving him, the fund would go to such of his aunt and cousins as survived him. Chapter 63, laws of 1918, pages 180-181; Cum. Supp. Comp. Stat. 1924 pp. 146-169.
Furthermore, John executed a will, Exhibit C-2, by which he devised his residuary estate to his executor and trustee to pay the income and a part of the corpus, if necessary, to George Adelung during his lifetime, and upon his death to pay said income to Louise Adelung, George's wife; and upon the death of the survivor, to pay over the fund to the children born to George and Louise.
In paragraph eleventh of his will (Exhibit C-2), John stated:
"Eleventh: In making this, my Last Will and Testament, I am not unmindful of the welfare of my adopted daughter, BARBARA LOUISE ADELUNG, whom I adopted by a decree in the Hudson County Orphans Court on January 30, 1942. I make no specific provision for my said daughter because under the voluntary trust which I established by deed of trust dated October 3, 1924, the corpus
of said trust will pass upon my death to my next of kin, and said BARBARA LOUISE ADELUNG will be entitled to share therein."
This testamentary recital would indicate that the settlor was impressed with the fact that his indenture of trust provided for his adopted daughter Barbara, who, he felt, would become one of his "next of kin" on his death.
In addition to the implications that arise from the circumstances *Page 44 
surrounding John at the time of the execution of the trust agreement, as hereinabove indicated, we are confronted with the general rule of construction that when the class of beneficiaries is described as next of kin of the settlor or testator, the class must be determined as of the death of the settlor or testator, as aforesaid, unless the indenture or will plainly indicates otherwise. Carter v. Martin, supra; Francisco v. CitizensTrust Co., supra; Page on Wills (Lifetime ed.), § 1054.
On October 3d 1924, adopted children were entitled to the same rights of inheritance from their foster parents, as children born to such parents in lawful wedlock. The part of the statute relative to the adoption of minor children in effect on October 3d 1924, is P.L. 1912 ch. 28 pp. 53-54; Cum. Supp. Comp. Stat.1924 p. 1555 § 97-16, and on October 7th, 1943, the date of death, R.S. 9:3-9. as amended, is as follows:
"* * * and the child shall be invested with * * * the rights of inheritance to real estate, or to the distribution of personal estate, on the death of such adopting parent or parents, as if born to them in lawful wedlock."
See Stout v. Cook, 77 N.J. Eq. 153; 75 Atl. Rep. 583;
reversed in part, 79 N.J. Eq. 573; 81 Atl. Rep. 821; affirmed in part, 79 N.J. Eq. 640; 81 Atl. Rep. 824; In re Finkenzeller,105 N.J. Eq. 44; 146 Atl. Rep. 656; affirmed, 107 N.J. Eq. 180;151 Atl. Rep. 905.
In In re Book's Will, 90 N.J. Eq. 549; 107 Atl. Rep. 435,
Chief-Justice Gummere, speaking for the Court of Errors and Appeals, said in part:
"The act concerning wills, the statute of descents and the statute of distribution composed the entire legislative system regulating the transmission of the estates of decedents, testate or intestate, prior to the passage of the act for the adoption of minor children. By the enactment of this latter statute that system, as we have just said, was, to some extent, changed. To determine the purpose of the legislature in making that change, and the extent thereof, all of these statutes must be read together; for it is a universally recognized *Page 45 
rule of statutory construction that where there are different statutes in pari materia, though made at different times, and not referring to each other, they shall be taken and construed together as one system, and as explanatory of each other. Sedgw.Stat. Con. (2d ed.) 211; 26 Am. Eng. Encycl. (2d ed.)620, and cases cited; White v. Hunt, 6 N.J. Law 506; Koch
v. Vanderhoff, 49 N.J. Law 621; Gartney v. Cohen,51 N.J. Law 127. Applying this rule, we are of opinion that the legislative intent to be gathered from a reading of all these statutes was to vest in adopted children all the rights and privileges which, by the act concerning wills, the statute of descents, and the statute of distribution, had been conferred upon children born in wedlock; that is to say, to place them in the same position as if they had been natural born children of the decedent, so far as those statutes are concerned — to substitute the lawful children of the decedent, no matter what the source of their origin, in the place of those born of his body. To give this legislative purpose its full significance the meaning of the words `child,' `children,' and `issue,' wherever appearing in the various statutes comprising the legislative system embodied therein, when used with relation to the testator or intestate, must be considered to have been enlarged so as to include adopted as well as natural born children within their scope."
The courts take the position that an adopted child occupies the same position as a natural child, so far as the rights of inheritance are concerned. And in cases where a settlor, grantor, or testator, uses the words "child," "lawful heir," or "next of kin" with reference to himself, the assumption is that he intended to include in those classes adopted children of his own, whether adopted before or after the execution of the trust indenture, deed or will. In re Alter, 92 N.J. Eq. 415;112 Atl. Rep. 483; Haver v. Herder, 96 N.J. Eq. 554; 126 Atl. Rep. 661;Ahlemeyer v. Miller, 102 N.J. Law 54; 131 Atl. Rep. 54;affirmed, 103 N.J. Law 617; 137 Atl. Rep. 543; Smallwood v.Smallwood, 121 N.J. Eq. 126; 186 Atl. Rep. 775; Jackson v.Beal, 127 N.J. Eq. 156; 11 Atl. Rep. 2d 750; In re McEwan,128 N.J. Eq. 140; 15 Atl. Rep. 2d 340; In re Fisler,131 N.J. Eq. 310; *Page 46 25 Atl. Rep. 2d 265; affirmed, 133 N.J. Eq. 421;30 Atl. Rep. 2d 894.
John's "next of kin" are to be ascertained by reference to the provisions of the statute of distribution in force at the time of the execution of the indenture. That statute favors the infant Barbara Louise Adelung as being the sole "next of kin." She, therefore, is entitled to the corpus and the income from the date of the settlor's death.
George Adelung is not entitled to share the fund with Barbara Louise since he was an adult when adopted. The statute relating to the adoption of adults in New Jersey did not become effective in New Jersey until March 13th, 1925 (P.L. 1925 ch. 99 p. 309), which is subsequent to the date of the trust indenture. Consequently, he cannot be considered as coming within the purview of the statute of distribution in force on the date of the indenture.
The complainant also seeks instructions as to what part, if any, of the New Jersey transfer inheritance taxes, and New Jersey estate taxes are payable out of the assets of the trust fund.
The New Jersey statute in effect on October 3d 1924, the date of the trust indenture, was P.L. 1922 ch. 174 p. 293 (at p.294) as follows:
"1. A tax shall be and is hereby imposed upon the transfer of any property, real or personal, of the value of five hundred dollars or over, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations, except as hereinafter provided, in the following cases:
 * * * * * * * *
"Third: When the transfer is of property made by a resident, or is of real property within this State, or of goods, wares and merchandise within this State, or of shares of stock of corporations of this State or of national banking associations located in this State, made by a nonresident, by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death. Every transfer by deed, grant, bargain, sale or gift, made within two years prior to the death of the grantor, vendor, or donor, of a material part of his estate, or in the nature of a final disposition or distribution thereof, and without an adequate valuable consideration, shall, in the absence of proof to the contrary, be deemed to have been made in contemplation of death within the meaning of this section." *Page 47 
The statute in effect on October 7th, 1943, the date of death of John F.W. Noe, is R.S. 54:34-1, which in part is as follows:
"54:34-1. Except as provided in section 54:34-4 of this title, a tax shall be and is hereby imposed at the rates set forth in section 54:34-2 of this title upon the transfer of property, real or personal, of the value of five hundred dollars or over, or of any interest therein or income therefrom, in trust or otherwise, to or for the use of any transferee, distributee, or beneficiary in the following cases:
 * * * * * * * *
"Resident or nonresident; intervivos transfers in contemplation of or to take effect upon death. c. where real or tangible personal property within this state of a resident of this state or intangible personal property wherever situate of a resident of this state or real or tangible personal property within this state of a nonresident, is transferred by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death * * *."
As to New Jersey transfer inheritance taxes, section 54:35-2 of the Revised Statutes provides as follows:
"54:35-2. All taxes imposed by chapters 33 to 36 of this title (sec. 54:33-1 et seq.), shall be paid to the state tax commissioner to be deposited by him when and as collected, with the treasurer of the state for the use of the state. Executors, administrators, trustees, grantees, donees or vendees shall be personally liable for any and all such taxes until paid as hereinafter directed, for which an action at law shall lie in the name of the state of New Jersey."
As to New Jersey estate taxes, section 54:38-6 of the Revised Statutes provides as follows:
"54:38-6. The state tax commissioner shall assess and collect all taxes imposed by this chapter. Such taxes when and as collected by him shall be paid forthwith into the state treasury for the exclusive use of the state, and all administrators, executors, trustees, grantees, donees and vendees, shall be personally liable for any and all such taxes until paid, for which an action at law shall lie in the name of the state, but no lien shall attach to any property of an estate on account of the tax imposed hereunder."
The complainant, as trustee, is responsible, and is made liable for the inheritance and estate taxes; and therefore, it is instructed and advised to pay the same from the trust fund assets. *Page 48 
Distribution of the trust fund shall not be made until such taxes are ascertained and paid by the complainant trustee out of the assets of the trust fund.
Complainant seeks instructions as to the payment of federal taxes as part of the estate of John F. Noe, deceased.
The federal statute applying is U.S. Code Annotated, title 26,Internal Revenue Code, sec. 811, pp. 17-18. The provisions applicable read as follows:
"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States.
 * * * * * * * *
"(c) Transfers in contemplation of, or taking effect at death. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter."
Counsel for the defendants deny that the trust fund assets are subject to federal estate taxation and cite U.S. TreasuryDepartment Regulations 105, § 81.18, reading as follows:
"Reg. 105, Sec. 81.18. Transfers with possession or enjoyment retained. Except in the case of a bona fide sale for an adequate and full consideration in money or money's worth, the gross estate embraces (section 811 (c)) all property transferred by the decedent, whether in trust or otherwise, if he retained or reserved the use, possession, right to the income, or other enjoyment of the transferred property, and if the transfer was made —
 "(1) At any time after 10:30 p.m. eastern standard time, March 3, 1931, and such retention or reservation is for his life, or for such a period as to evidence his intention that it should *Page 49 
extend at least for the duration of his life and his death occurs before the expiration of such period; or
 "(2) At any time after 5 p.m. eastern standard time, June 6, 1932, and such retention or reservation is for any period mentioned in (1) or for any period not ascertainable without reference to his death.
"A reservation for a `period not ascertainable without reference to his death' may be illustrated by a reservation of the right to receive, in quarterly payments, the income of the transferred property where none of the income between the last quarterly payment and decedent's death was to be received by him or his estate; or by a reservation of a life estate following a precedent estate for life or a term of years.
"The use, possession, right to the income, or other enjoyment of the property will be considered as having been retained by or reserved to the decedent to the extent that during any such period it is to be applied towards the discharge of a legal obligation of the decedent, or otherwise for his pecuniary benefit.
"If such retention or reservation is of a part only of the use, possession, income, or other enjoyment of the property, then only a corresponding proportion of the value of the property should be included in determining the value of the gross estate. (Commerce Clearing House, Inc., Federal Estate Tax Service, Section 3435)."
As the transfer in trust was made on October 3d 1924, apparently under the Treasury Department regulation, quoted above, the transfer made by John F.W. Noe in trust is not subject to federal estate taxes, and complainant is so advised.
Complainant is instructed that Edward A. Markley as executor of the will of John F.W. Noe, deceased, is entitled to the $151.23 accumulated income of the trust fund in the hands of complainant as trustee on October 7th, 1943, the date of death of John F.W. Noe.
Complainant is instructed that Edward A. Markley as executor of the will of John F.W. Noe, deceased, is entitled to the $433.37 income of the trust accrued to October 7th, 1943, the date of death of John F.W. Noe.
It appears from Exhibit C-7 on April 26th, 1928, John F.W. Noe and Lillian L. Noe assigned to John J. Quinn, Theodore D. Parsons and Thomas P. Doremus, partners trading as Quinn, Parsons Doremus, all the rents, issues and profits of the trust fund and $2,500 of the corpus of the trust fund to secure payment of that amount payable either from the rents, income, issues and profits or from the corpus if and when it becomes vested in them or either of them. *Page 50 
In a letter dated May 3d 1928 (Exhibit C-8) from Quinn, Parsons Doremus to the complainant, in which was enclosed the assignment, Quinn, Parsons Doremus stated it was their agreement with Mr. and Mrs. Noe not to demand payments under the assignment until they were in easier financial condition. They directed complainant to file the assignment and hold it until they gave complainant notice to act under it.
The uncontradicted testimony of George Letterhouse, vice-president of the complainant, is to the effect that Quinn, Parsons Doremus did not give complainant notice to act under the assignment.
The trust indenture, Exhibit C-1, shows clearly that John F.W. Noe had no interest in the corpus of the trust and that he had only a life interest to the income, the corpus and any accumulated income going to his next of kin at his death. Lillian L. Noe, the wife, had no interest in the trust unless she survived the settlor. Under the circumstances, Quinn, Parsons 
Doremus are not entitled to be paid from the corpus or accrued income of the trust.
I shall advise an order in conformity with the above conclusions.